(No. 53472

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. COLIE W. HARON *et al.,* Appellees.

*Opinion filed June 4, 1981.—Rehearing denied
July 6, 1981.*

Tyrone C. Fahner, Attorney General, of Springfield, and John Clemons and William G. Schwartz, State's Attorneys, of Murphysboro (Melbourne A. Noel, Jr., Assistant Attorney General, of Chicago, and Martin N. Ashley and Stephen E. Norris, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

John H. Reid, Deputy Defender, and Randy E. Blue, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In the circuit court of Jackson County, a four-count information, as amended, charged defendant Colie W. Haron with one count of armed violence, two counts of aggravated battery, and one count of unlawful use of weapons. In a separate proceeding, also in the circuit court of Jackson County, defendant Robert G. Kehm was charged by information with one count of illegal delivery of cannabis and one count of armed violence. Each defendant moved to dismiss the armed-violence count on the ground that section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) was unconstitutional. *Sua sponte* the circuit court consolidated the cases as to the constitutional issues raised by the motions, declared article 33A of the Criminal Code of 1961 unconstitutional, and dismissed the armed-violence charges. The People appealed directly to this court. 73 Ill. 2d R. 603.

The dismissed counts charged that defendant Haron, "while armed with a dangerous weapon, namely a pistol, performed acts prohibited by Chapter 38, Section 12—4(b)(1), Illinois Revised Statutes, in that he committed the felony offense of aggravated battery by causing great bodily harm to Michael Banks and Tony Carter ***,"

and that defendant Kehm "while armed with a dangerous weapon, namely a .38 caliber derringer, committed the felony offense of Illegal Delivery of more than five hundred (500) grams of a substance containing cannabis by knowingly and unlawfully delivering more than five hundred (500) grams of a substance containing cannabis to Marc Oliva and James Temple ***."

Article 33A of the Criminal Code of 1961 provides:

> "Sec. 33A—1. Definitions. (a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character. (c) A category II weapon is a bludgeon, blackjack, slungshot, sand-bag, sandclub, metal knuckles, billy or other dangerous weapon of like character."

> "Sec. 33A—2. Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law."

> "Sec. 33A—3. Sentence. (a) Violation of Section 33A—2 with a Category I weapon is a Class X felony. (b) Violation of Section 33A—2 with a Category II weapon is a Class 2 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty. A second or subsequent violation of Section 33A—2 with a Category II weapon is a Class 1 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty." Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 to 33A—3.

Although the circuit court held article 33A unconstitutional on a number of grounds, defendants' attack on its validity is more limited. They contend first that it is un-

constitutionally vague and overbroad because it fails to provide notice whether the dangerous weapon must be used to facilitate the commission of a nonviolent offense, and for the reason that it fails to provide notice that the severity of an offense may be doubly enhanced because a dangerous weapon was employed.

The People contend that because he was charged with a crime of violence, defendant Haron is without standing to attack the validity of the statute on the ground that it permits armed violence to be charged by reason of the commission of a nonviolent felony while armed with a dangerous weapon. Defendant Kehm, charged with armed violence predicated upon his carrying a derringer during the commission of a nonviolent crime, also contends that the statute is overbroad. Since we must decide the issue of overbreadth with regard to nonviolent crimes whether or not defendant Haron has standing, we need not further consider the question of Haron's standing.

Concerning the issue of overbreadth, defendants suggest that in keeping with the rule that a statute should be construed so as to eliminate doubts as to its validity, article 33A should be construed to "require that the weapon be utilized to facilitate an offense." They point out that there is no allegation that defendant Kehm used the weapon to facilitate delivery of cannabis or that he was not lawfully in possession of the gun.

In *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, the court said:

"It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained there-from it must prevail and will be given effect with-

out resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports."

See also *Franzese v. Trinko* (1977), 66 Ill. 2d 136.

Section 33A—2 prohibits the commission of any felony "while armed with a dangerous weapon." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) Section 33A—1 defines the phrase "armed with a dangerous weapon" to include any person who "carries on or about his person or is otherwise armed with a category I or category II weapon." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1.) The language of these sections does not require that there be a connection between the underlying felony and the fact that the felon was armed with a dangerous weapon while he committed the felony.

We note that a number of other States have weapons statutes comparable to the one here involved, in that they ostensibly require no connection between the predicate offense and the presence of a weapon. (See, *e.g.*, Ala. Code sec. 13—6—151 (1977); Cal. Penal Code sec. 12022 (Deering 1980); Del. Code Ann. tit. 11, sec. 1447 (1979); Fla. Stat. sec. 790.07 (West Supp. 1981); Ga. Code sec. 26—9908a (1978); Mich. Comp. Laws Ann. sec. 750.227b (1980-81 Supp.); 18 Pa. Cons. Stat. Ann. sec. 6103 (Purdon 1973); R.I. Gen. Laws sec. 11—47—3 (1980 Supp.); S.C. Code sec. 16—23—490 (1977); S.D. Codified Laws Ann. sec. 22—14—13 (1979); Tenn. Code Ann. sec. 39—4923 (1980 Supp.); Vt. Stat. Ann. tit. 13, sec. 4005 (1974); Wash. Rev. Code Ann. sec. 9.41.025 (1977); Wis. Stat. Ann. sec. 939.63 (West Supp. 1981); Wyo. Stat. sec. 6—11—116 (1980 Supp.).) Several other States prohibit, *inter alia*, the use of firearms in certain circumstances. (See, *e.g.*, Colo. Rev. Stat. sec. 16—11—309 (1980 Supp.); Haw. Rev. Stat. sec. 706.660.1 (1976);

Md. Code Ann. art. 27, sec. 36B(d) (1976); Mass. Ann. Laws ch. 265, sec. 18B (Michie 1980); Okla. Stat. Ann. tit. 21, sec. 1287 (West Supp. 1981).) A study of these divergent statutory formulations suggests the existence of two legislative approaches to the problem of armed violence. One approach prohibits and punishes the "use" of firearms in certain contexts. Of necessity in such States, there must be a connection between the underlying criminal offense and the presence of a weapon—the weapon must be used. The other approach, however, prohibits and punishes the mere possession or carrying of a weapon during the commission of a crime. In such States, the mere physical presence of a weapon while a crime is being committed is thought to be a sufficient threat to warrant proscription. (See *Wayne County Prosecutor v. Recorder's Court Judge* (1979), 406 Mich. 374, 390-91, 280 N.W.2d 793, 796.) The General Assembly has clearly taken the latter approach. There is no suggestion in the statutory language that the offense proscribed requires that there be "use" of a weapon in the commission of a felony. It is clear that in amending article 33A the General Assembly intended to extend the number of circumstances in which the presence of a weapon is prohibited. (Compare, *e.g.,* Ill. Rev. Stat. 1979, ch. 38, par. 24—1.) Defendants, in requesting that we superimpose on article 33A the requirement that the weapon be "utilized to facilitate the predicate felony," are suggesting that we alter the purposes of the statute. As we have repeatedly said, it is not our function to declare that the General Assembly did not mean what the plain language of the statute imports (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350), and we decline to do so here.

Alternatively, defendants argue that "the Armed Violence Statute fails to give adequate notice of its proscrip-

tions and thereby denies due process." They assert that the statute is deficient because it fails to indicate whether an offender must have control over the weapon and utilize it in committing the underlying felony.

In *People v. Schwartz* (1976), 64 Ill. 2d 275, this court said with respect to challenges for vagueness and overbreadth:

"A criminal statute violates the requirement of due process of law if it fails to adequately give notice as to what action or conduct is proscribed. (*People v. Vandiver* (1971), 51 Ill. 2d 525.) Impossible standards of specificity, however, are not required. (*Jordan v. De George* (1951), 341 U.S. 223, 231, 95 L. Ed. 886, 71 S. Ct. 703; *People v. Dednam* (1973), 55 Ill. 2d 565.) As stated by Mr. Justice Marshall, 'Condemned to the use of words, we can never expect mathematical certainty from our language.' (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294.) When called upon to decide a vagueness question, a court will assume, absent contrary legislative intent, that the words of the statute have their ordinary and popularly understood meanings. (*Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510.) In addition to the language used, consideration is given to the legislative objective and the evil the statute seeks to remedy. (*People v. Dednam* (1973), 55 Ill. 2d 565.) A statute enjoys a presumption of constitutionality. *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 12." 64 Ill. 2d 275, 280-81.

Here, as we have indicated, the armed-violence statute clearly does not require that the presence of a weapon facilitate the predicate offense. Rather, the mere fact that a person, while committing a felony, "carries on or about his person or is otherwise armed with" a dangerous

weapon is sufficient to come within the language of the statute. We cannot conclude that sections 33A—1 and 33A—2 either forbid or require the doing of an act in terms "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanzetta v. New Jersey* (1939), 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618, 619; see also *Bouie v. City of Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697.

Defendants also argue that the armed-violence statute is unconstitutionally vague with respect to offenses "which are already enhanced by virtue of the fact that the offender is armed." Again they argue that the statute may be construed so as to avoid vagueness. Thus, defendants argue that "[t]he language of the sentencing provisions of the Armed Violence Statute *** supports the contention that the legislature did not intend that those felonies which have as a material element proof that the offender was armed should be utilized as predicate felonies for armed violence. The only logical conclusion to be drawn is that the legislature intended that the penalty should be the greater of either that provided for armed violence or that provided for the predicate felony."

As support for the argument that the legislature did not intend to doubly enhance the penalty for the employment of a firearm in the commission of a misdemeanor battery, defendant relies on *Busic v. United States* (1980), 446 U.S. 398, 64 L. Ed. 2d 381, 100 S. Ct. 1747. There the two defendants were tried and convicted under title 18, section 924(c), of the United States Code, for carrying and using a firearm during the commission of a felony and under title 18, section 111, of the United States Code for assaulting a Federal officer with a dangerous weapon. Section 924(c) provides in part:

"(c) Whoever—
   (1) uses a firearm to commit any felony for

which he may be prosecuted in a court of the United States, or

> (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States.

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years."
(18 U.S.C. sec. 924(c) (1976).)

The defendants in *Busic* contended that they could not be sentenced consecutively for assaulting a Federal officer with a dangerous weapon under section 111, and for the use of a firearm in connection with that crime under section 924(c). The Third Circuit Court of Appeals initially concluded that the imposition of a doubly enhanced penalty violated the double jeopardy clause of the fifth amendment because the two statutes required proof of identical elements. It remanded for resentencing under either section 111 or section 924(c) at the government's election. After the Supreme Court's decision in *Simpson v. United States* (1978), 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909, the court of appeals vacated its prior decision and arrived at a nearly identical conclusion on statutory grounds. *Simpson* involved defendants convicted of and sentenced for two aggravated bank robberies and of using firearms to commit the robberies, in violation of 18 U.S.C. section 2113(a) (1976). Section 2113(a) provides for enhancement of the penalty for bank robbery where a dangerous weapon is used. In addition, the defendants were convicted and sentenced under section 924(c), the sentences to run consecutively with those under section 2113(a). Looking to section 924(c)'s legislative history, the necessity of resolving ambiguities in criminal statutes in favor of lenity, and the rule of statutory construction that a specific provision takes precedence over a general provision, the court concluded that Congress did not intend to authorize the imposition of an additional penalty

under section 924(c) where the penalty for bank robbery was already enhanced under section 2113(a).

In *Busic,* the government acknowledged that *Simpson* prohibited the imposition of similarly enhanced sentences under sections 924(c) and 111. It contended, however, that it was entitled to proceed under the enhancement provisions of section 924(c) rather than the enhancement provisions of a predicate felony statute such as section 111.

The Supreme Court disagreed, and held that "prosecution and enhanced sentencing under section 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision." (446 U.S. 398, 444, 64 L. Ed. 2d 381, 388, 100 S. Ct. 1747, 1752.) Again, as in *Simpson,* the court placed considerable reliance on the legislative history of section 924(c). That section was offered as an amendment by Representative Poff (114 Cong. Rec. 22231 (1968)), and passed the same day. The following comment was made by Representative Poff regarding his amendment:

> "For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112, or 113 which already define the penalties for the use of a firearm in assaulting officials, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies." 114 Cong. Rec. 22232 (1968).

As in *Simpson,* the Supreme Court's view of section 924(c) was reinforced by the rule that ambiguity in a criminal statute should be resolved in favor of lenity (446 U.S. 398, 406, 64 L. Ed. 2d 381, 389, 100 S. Ct. 1747, 1753), and "the principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence" (446 U.S. 398, 406, 64 L. Ed. 2d 381, 389, 100 S. Ct. 1747, 1753).

The courts of other jurisdictions which have enacted statutes similar to the one here involved have considered

the issue of double enhancement. (See, *e.g., In re Shull* (1944), 23 Cal. 2d 745, 146 P.2d 417; *Hunter v. Delaware* (Del. 1980), 420 A.2d 119, vacated (1981), 450 U.S. 991, 68 L. Ed. 2d 190, 101 S. Ct. 1689; see *Albernaz v. United States* (1981), 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137; *Cone v. Florida* (Fla. 1973), 285 So. 2d 12; *Wayne County Prosecutor v. Recorder's Court Judge* (1979), 406 Mich. 374, 280 N.W.2d 793; *Sours v. Missouri* (Mo. 1980), 593 S.W.2d 208; *Grace v. Harris* (Okla. Crim. App. 1971), 485 P.2d 757; *State v. Boudreau* (1974), 113 R.I. 497, 322 A.2d 626; *State v. Workman* (1978), 90 Wash. 2d 443, 584 P.2d 382.) Many of the cases dealing with statutes comparable to the Illinois armed-violence statute involve double jeopardy considerations not present in this case. (For the present status of double jeopardy claims regarding double enhancement, see *Albernaz v. United States* (1981), 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137.) However, three cases are sufficiently analogous to warrant detailed examination prior to our decision here: *In re Shull* (1944), 23 Cal. 2d 745, 146 P.2d 147: *Wayne County Prosecutor v. Recorder's Court Judge* (1979), 406 Mich. 374, 280 N.W.2d 793; and *State v. Workman* (1978), 90 Wash. 2d 443, 584 P.2d 382.

In *In re Shull* (1944), 23 Cal. 2d 745, 146 P.2d 142, the defendant was convicted of assault with a deadly weapon and sentenced to the prescribed term of imprisonment. However, an additional consecutive term of five years was imposed pursuant to a sentence enhancement provision in the California Deadly Weapons Act which applied when a defendant committed a felony while armed with any one of a number of enumerated weapons. The California Supreme Court held that the enhancement provision was not intended to apply where the felony of which the defendant stood convicted was that of assault with a deadly weapon. As in *Busic,* the California court was persuaded that the specific provisions of the assault

statute should control the more general terms of the Deadly Weapons Act:

"It is not unreasonable to suppose that the Legislature believed that for felonies in which the use of a gun was not one of the essential factors, such as rape, larceny, and the like, an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon. Hence, such a condition would be reasonable grounds for increasing the penalty where felonies are involved which do not include as a necessary element being armed with a pistol. The Legislature has by other acts imposed an increased punishment where the only additional factor, being armed with a deadly weapon, is present. The only difference between a simple assault and one with a deadly weapon is the latter factor. The commission of a simple assault is declared a misdemeanor, and the punishment therefor is a fine of not over $500 or imprisonment in the county jail for six months, or by both. (Pen. Code, secs. 240, 241.) When there is added to the assault the use of a deadly weapon the punishment is increased to imprisonment in the state prison not exceeding ten years or in the county jail not exceeding one year or a fine not exceeding $5,000 or by both fine and imprisonment (Pen. Code sec. 245), and if section 1168(2)(a) or 3024(a) is applicable and the weapons therein mentioned are used the minimum term is fixed at five years where the perpetrator is not one previously convicted of a felony. Briefly, the Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the

same offense without any additional factor existing the added punishment should be imposed. In felonies where a deadly weapon is not a factor in the offense, the additional punishment is imposed by section 3 of the Deadly Weapons Act, because of the additional factor of a deadly weapon being involved.

The foregoing view of the legislative intent is further fortified by the very wording of section 3. It refers to the commission of a felony as *complete in itself* and then *adds* 'while armed' with a pistol. The felony of assault with a deadly weapon would not be complete in itself unless the element of the weapon were present. Hence, there is no occasion for *adding* the weapon factor." (Emphasis in original.) 23 Cal. 2d 745, 750-51, 146 P.2d 417, 419.

In *State v. Workman* (1978), 90 Wash. 2d 443, 584 P.2d 382, the defendants were found guilty of first-degree robbery (which applies to robberies committed while armed with a deadly weapon). In addition the jury returned special verdicts that the defendants had been armed with a deadly weapon, which was a firearm. The Washington Uniform Firearms Act requires the sentencing judge to impose an additional minimum sentence of five years where a defendant has attempted a felony while in possession of a firearm. However, the trial court vacated the special finding. The Washington Supreme Court affirmed, after referring to *Simpson v. United States* (1978), 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909. Notwithstanding the absence in Washington of legislative history comparable to that employed in *Simpson,* the Washington court held that "the principle of giving precedence to the specific statute, and the rule of lenity" (90 Wash. 2d 443, 455, 584 P.2d 382, 389), prevented application of the enhancement provision to attempted first-degree robbery.

In *Wayne County Prosecutor v. Recorder's Court Judge* (1979), 406 Mich. 374, 280 N.W.2d 793, one defendant was convicted of second-degree murder and the other of armed robbery. In addition, each was convicted of the separate offense of carrying or possessing a firearm during the commission of a felony. The Michigan Supreme Court held that the legislature did intend that a "felony-firearm" conviction could be founded upon a felony itself involving a firearm. It said:

"The statute decrees that any person carrying or possessing a firearm during a felony or attempted felony *'is guilty of a felony'* and shall be imprisoned two years. This two-year sentence must be imposed *'in addition to'* the sentence for the felony or attempted felony and must be served *'consecutively'* to and *'preceding'* the sentence for that crime. (Emphasis added.)

This language is markedly different from the language used by the Legislature in those statutes which are merely sentence enhancement statutes. [Whereupon the court quoted the Michigan habitual offender statute.] There is no language in this statute indicating that the defendant shall be deemed guilty of a separate felony or that a consecutive sentence is to be imposed. The one sentence originally imposed for the felony which gives rise to the habitual offender proceedings is simply increased.

The language of the felony-firearm statute is also significantly different from the language used by the Legislature in those statutes which establish mandatory minimum sentences. [Whereupon the court quoted the Michigan armed robbery statute.] Again, there is no indication of an intent to establish a separate felony or require a consecutive sentence. The sentencing judge is merely required to

impose a single sentence with a minimum term of at least two years.

The language employed by the Legislature in the felony-firearm statute, especially when analyzed against the backdrop of the sentence enhancement and mandatory minimum sentencing provisions quoted above, leaves no doubt that the Legislature intended to make the carrying of a weapon during a felony a separate crime and intended that cumulative penalties should be imposed. The Legislature has clearly expressed its judgment that carrying a firearm during any felony which may, but need not necessarily, involve the carrying of a firearm, entails a distinct social harm inimical to the public health, safety and welfare which deserves separate treatment. In order to deter the use of guns, the Legislature has chosen to create a separate crime." 406 Mich. 374, 389-91, 280 N.W.2d 793, 795-96.

The People argue that no question of the General Assembly's intent regarding double enhancement is presented here, because "there is only a single enhancement of penalty in the present defendants' cases, and that is from their predicate felonies to armed violence." That is true as to defendant Kehm, but not as to defendant Haron. Although it would appear that the aggravated-battery charge could have been based on section 12–4(a), the aggravated-battery count against Haron charges that in committing the offense he used a deadly weapon (Ill. Rev. Stat. 1979, ch. 38, par. 12–4(b)(1)). Thus the enhancement of the offense of battery to that of aggravated battery was based on the use of a deadly weapon.

Unlike the Supreme Court in *Simpson* and *Busic*, we have no legislative history to assist us in determining whether the General Assembly intended the double enhancement to apply to such charges. However, this court

has recognized that a policy of lenity applies with respect to the interpretation of criminal statutes (see *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 370-71; *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 539; *People v. Lund* (1943), 382 Ill. 213, 215-16), and also recognizes the rule of construction giving precedence to a specific provision where it conflicts with a general one. (See *Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 205.) Other considerations are present here, as well, however, and we need not rely solely on rules of construction to resolve the difficulty presented here as did the court in *State v. Workman* (1978), 90 Wash. 2d 443, 543 P.2d 382.

Our review of the language of the statute and the authorities leads us to conclude that the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence. In our opinion the requirement of section 33A—2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon. This conclusion finds support in the sentencing provisions of the article. Section 33A—3(b) provides that a "[v]iolation of Section 33A—2 with a Category II weapon is a Class 2 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty. A second or subsequent violation of Section 33A—2 with a Category II weapon is a Class 1 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3(b).) These provisions are clearly not applicable to an act which, if committed while unarmed, would be a misdemeanor. Nothing in the explicit provision that a violation of section 33A—2 involving a Category I weapon is a Class X felony requires a different construction.

Because of the conclusions reached we need not address defendants' constitutional contentions regarding double enhancement.

Defendants' final contention is that the required six-year minimum term of imprisonment applicable to a violation of article 33A involving a Category I weapon (a Class X offense) violates due process under both the Illinois and United States constitutions. It is argued, with respect to defendant Kehm, that "[a] penalty statute which seeks to remedy 'the growing incidence of violent crime' by subjecting a non-violent deliverer of cannabis to a mandatory sentence of six to thirty years, the minimum of which is only one year less than the maximum sentence otherwise provided for such a transgression ***, is not reasonably designed to remedy that evil."

The standard by which legislative determinations of penalty are to be judged was recently stated in *People v. Bradley* (1980), 79 Ill. 2d 410, 417:

> "It is the general rule that the legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses. (*People v. Dixon* (1948), 400 Ill. 449, 453.) The legislature's power to fix penalties is, however, subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law. (*St. Louis, Iron Mountain, & Southern Ry. Co. v. Williams* (1919), 251 U.S. 63, 66, 64 L. Ed. 139, 140-41, 40 S. Ct. 71, 73; *Louisiana ex rel. Francis v. Resweber* (1947), 329 U.S. 459, 468, 91 L. Ed. 422, 429, 67 S. Ct. 374, 378 (Frankfurter, J., concurring); *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 158-59.)
>
> > 'We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has

determined to be a threat to the public health, safety and general welfare.' (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.)

The test, thus, focuses on the purposes and objectives of the enactment in question."

As is clear from the quoted language, due process considerations arise with respect to sentencing only where a defendant has been or will be deprived of liberty. Here there has been no adjudication of guilt and no sentencing. Under these circumstances we cannot conclude that defendant Kehm has been deprived of liberty without due process of law in connection with the sentencing provisions of article 33A. Moreover, any pronouncement we might make as to the reasonableness of the penalties attached to a violation of article 33A would be rendered gratuitous by a later adjudication of not guilty. Therefore, we conclude that any attack on the sentencing provisions of article 33A is premature. But see *People v. Mayberry* (1976), 63 Ill. 2d 1, 8.

For the reasons stated, the judgment of the circuit court of Jackson County is affirmed as to the dismissal of the armed-violence count against Haron and is otherwise reversed. The cause is remanded for proceedings consistent with this opinion.

*Affirmed in part and reversed in part and remanded.*