THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAUD S. PACE, Defendant-Appellant.

First District (4th Division)    No. 80-602

Opinion filed September 10, 1981.

Ralph Ruebner and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Mark E. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County, defendant, Laud S. Pace, was found guilty of seven counts of theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1), one count of unlawful use of weapons (Ill. Rev. Stat. 1979, ch. 38, par. 24—1) and three counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). Defendant was sentenced to concurrent prison terms of ten years for armed violence, four years for theft, and one year for unlawful use of weapons. On appeal, defendant contends that: (1) he was improperly convicted of armed violence because the armed violence statute is unconstitutionally vague and the evidence failed to show the use of a weapon to commit theft; and (2) the sentences of 10 years for armed violence and four years for theft are excessive and should be reduced to the respective statutory minimums of six and two years.

We affirm.

Defendant, a former employee of the Chicago Art Institute, personally carried out his scheme whereby three paintings by Paul Cezanne, entitled "Apples on a Table Cloth," "House on a River" and "Madame Cezanne in a Yellow Chair" were stolen. On May 21, 1979, defendant contacted E. Lawrence Chalmers, president of the Art Institute, and informed him that the "thieves" of the Cezanne paintings had contacted him. They asked him to arrange an exchange of the paintings for $250,000. After contacting law enforcement authorities, Chalmers told defendant that he should speak with William Smith, the Art Institute's insurance adjuster, who was staying at the Drake Hotel.

Later, Chalmers, Smith, and law enforcement personnel arranged to obtain the sum demanded and to have the hotel room next door to Smith's room set up with recording equipment staffed by police. When defendant, by prearrangement, met Smith in Smith's room on May 22, 1979, defendant asked to see the money to be exchanged for the paintings.

Smith showed it to him. An exchange of the cash for the paintings was agreed upon for the next morning in Smith's room.

The next morning, defendant brought with him a large package which contained three paintings. Smith and Chalmers were present in Smith's room. Defendant told Smith that the "thieves" wished to make the exchange and that there were men in the corridor and in the streets armed with "45's." Defendant then opened his suit coat for three to four seconds and displayed a pistol placed under his belt. Smith did not see the gun but Chalmers did. The exchange of the money for the paintings then took place. As defendant departed from the room with the money, he was arrested. The money was retaken. Upon searching defendant, police recovered from him a loaded nine-millimeter automatic pistol and four fully loaded ammunition clips. The retrieved paintings had an aggregate value of $4.3 million.

OPINION

I

Defendant first contends that his conviction for armed violence is legally impermissible and cannot stand because the armed violence statute is unconstitutionally vague and denies due process of law under the constitutions of both Illinois and the United States. Defendant also contends that the armed violence convictions must be reversed because the evidence presented did not prove defendant used the gun to commit the theft.

Article 33A of the Criminal Code of 1961 provides:

"§33A—1. Definitions. (a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person· or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character. (c) A category II weapon is a bludgeon, blackjack, slungshot, sandbag, sandclub, metal knuckles, billy or other dangerous weapon of like character."

"§33A—2. Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law."

"§33A—3. Sentence. (a) Violation of Section 33A—2 with a Category I weapon is a Class X felony. (b) Violation of Section 33A—2 with a Category II weapon is a Class 2 felony or the felony

classification provided for the same act while unarmed, whichever permits the greater penalty. A second or subsequent violation of Section 33A—2 with a Category II weapon is a Class 1 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty." Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 to 33A—3.

Defendant's vagueness attack is two-fold: first, the statute fails to make clear whether the weapon must actually be used to facilitate the offense and the statute is inconsistent since it includes nonviolent felonies as acts of armed violence; and second, the penalty set forth for the offense is not determined with respect to the seriousness of the offense in violation of article 1, section 11[1] of the Illinois Constitution because all violations of section 33A—2 with a category I weapon are declared class X felonies.

The Illinois Supreme Court recently addressed these issues in *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, and held that the statute was not unconstitutionally vague. In *Haron*, the defendant's charge of armed violence was predicated upon his carrying a derringer during the commission of a nonviolent crime. There was no allegation that the defendant used the weapon to facilitate the offense. The *Haron* court held that the armed violence statute clearly does not require that the presence of a weapon facilitate the underlying offense, but that "the mere fact that a person, while committing a felony, 'carries on or about his person or is otherwise armed with' a dangerous weapon is sufficient to come within the language of the statute." (85 Ill. 2d 261, 269-70.) The court reasoned that in amending the armed-violence statute to include all felonies, the General Assembly clearly "intended to extend the number of circumstances in which the presence of a weapon is prohibited [citation]." 85 Ill. 2d 261, 268.

■■ In view of the Illinois supreme court's conclusion that the armed-violence statute neither requires nor forbids the doing of an act, which in terms is so vague " '* * * that men of common intelligence must necessarily guess at its meaning and differ as to its application' " (85 Ill. 2d 261, 270), we necessarily must reject the first aspect of defendant's vagueness argument.

We now turn to the second aspect of defendant's argument, that the required six year minimum term of imprisonment applicable to a violation of article 33A involving a category I weapon violates due process under the Illinois and United States constitutions. Although *Haron* dis-

---

[1] This section provides in part:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. ° ° °." Ill. Const. 1970, art. 1, §11.

cussed but declined to decide a similar constitutional challenge, this court recently upheld the statute against this constitutional challenge in *People v. Lynom* (1981), 97 Ill. App. 3d 1113.

As in *Haron* and *Lynom*, defendant here argues that a penalty statute which seeks to remedy the "growing incidence of violent crime" by subjecting a nonviolent perpetrator of theft to a mandatory minimum prison sentence of six years without the possibility of probation, periodic imprisonment, or conditional discharge is not reasonably designed to remedy that evil. Defendant also posits that the armed violence statute offends article 1, section 11 of the 1970 Illinois constitution, which provides that penalties shall be determined with respect to the seriousness of the offense, because the sentencing judge is not allowed to tailor an appropriate punishment for the offense.

As noted by both the *Haron* and *Lynom* courts, the standard by which legislative determinations of penalty are to be judged was recently set forth in *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1032:

> "It is the general rule that the legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses. (*People v. Dixon* (1948), 400 Ill. 449, 453.) The legislature's power to fix penalties is, however, subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law. [Citations.]
>
> > 'We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.)
>
> The test, thus, focuses on the purposes and objectives of the enactment in question."

The *Haron* court noted that in amending article 33A, the legislature intended to extend the number of circumstances in which the presence of a weapon is prohibited. Although we are without benefit of legislative history in this area, we believe it is apparent that the legislature intended to remedy the likelihood that violence could occur if a person committed a felony—any felony—while armed with a category I weapon. The remedy designed to void that evil—the penalty of a possible prison term of 6 to 30 years—is not so disproportionate to the seriousness of the offense such that it shocks the moral sense or is cruel or degrading. *People v. Lynom*; *People v. Houston* (1976), 43 Ill. App. 3d 677, 357 N.E.2d 184.

■■ We also do not believe that the penalty violates article 1, section 11 of the 1970 Illinois constitution. Defendant urges that the penalty scheme

prohibits sentencing alternatives regardless of the violent or nonviolent nature of the act and thereby allows punishments that are disproportionate to the offense. As already noted by this court, the statute's penalty is directed at the commission of *any* felony—whether or not it is "violent"—while armed with a category I weapon. The penalty is not designed to remedy the evil of the underlying felony alone, but rather the evil of committing the felony while armed with a category I weapon. It is evident that the legislature intended to proscribe the commission of any felony with such a weapon and believed that the seriousness of this offense warranted the penalty so affixed. In our view, the statute is a proper exercise of police power. The armed violence statute is not unconstitutionally vague. Since defendant was armed with a category I weapon while committing the felony of theft, we necessarily must sustain his armed violence convictions.

## II

Defendant next contends that his sentences of ten years for armed violence and four years for theft should be reduced to the respective statutory minimums of six and two years. We disagree.

In *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the Illinois supreme court affirmed its earlier ruling in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, that under Supreme Court Rule 615(b)(4), which provides that a reviewing court may reduce the punishment imposed by the trial court, "[t]he standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether this discretion was abused." 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545.

At the sentencing hearing in the instant case, the State argued in aggravation that the stolen property was valued at $4.3 million and that defendant, who was armed heavily, posed a serious danger to the persons involved in the exchange of money and to innocent bystanders. In mitigation, the defense argued that defendant had no prior convictions and was enrolled in a training program. Defendant's mother testified that he suffered from epilepsy and that her health was poor. Defendant's step-father testified that the family business would close without defendant's help.

In accordance with section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)), the experienced trial court specified the reasons for the sentences imposed. The trial court emphasized that defendant committed the theft by taking advantage of his employee status at the Art Institute, that defendant was armed during the exchange of money for the paintings, and that the

property stolen was worth $4.3 million dollars. As noted in *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882:

> "[T]he trial judge is normally in a better position to determine the punishment to be imposed than the courts of review. [Citations.] A reasoned judgment as to the proper sentence to be imposed * * * depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citation.] The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' [Citation.]"

■■ Here, the trial judge was charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the sentencing task had been ours. (*People v. Cox; People v. Perruquet.*) We cannot say that the trial judge abused his discretion.

For the reasons noted, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.