THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HENRY BODEMAN, Defendant-Appellant.

First District (3rd Division)    No. 80-1716

Opinion filed March 24, 1982.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

A jury found defendant, Henry Bodeman, guilty of armed violence and of two counts of aggravated battery. The court sentenced him to terms of six years for armed violence and three years for each count of aggravated battery, all the sentences to run concurrently. On appeal defendant contends that prejudicial hearsay statements were improperly admitted into evidence; that the trial court permitted the State to impeach defense witnesses with prior inconsistent statements and then failed to advise the jury that these statements could not be considered substantively; that the trial court improperly limited defense counsel's cross-examination of the complaining witness; that the prosecutor made improper comments during closing argument; that there is no valid count upon which the conviction for armed violence can stand; that defendant could not be convicted for both armed violence and aggravated battery since

both offenses were based upon the same act; that the armed violence statute is unconstitutional; and that the evidence adduced was insufficient to support the convictions for aggravated battery.

Bernd Harrer, Louis Pocasangre, Sergio Cortez, and Alfred McCalla, all friends, testified for the State that they arrived at a tavern at about 1:30 a.m. on December 16, 1978. Shortly after 4 a.m., Mr. Hall, employed by the tavern as a bouncer, announced that the tavern was closing. As they were leaving, the four men exchanged insults with defendant, also a patron, and then entered Pocasangre's automobile which was parked outside. Harrer and Cortez sat in the back of the vehicle, while McCalla sat in front next to Pocasangre. Cortez returned to the tavern to use the washroom and was accompanied by McCalla who was refused service at the bar. Defendant and Hall followed McCalla to the vehicle. Hall stood at the driver's side while defendant knocked on the passenger's side window with a gun. Both men were yelling threats. When Pocasangre lowered the power-operated window, defendant tried to hit McCalla in the face with a gun. The gun fired, striking Pocasangre in the hand.

Dana White and Erol Sengellu, the tavern bartenders, testified for defendant that a gun found in a tavern drawer had been given to White by defendant after he arrived and that at closing defendant left without the gun and did not return. Both witnesses stated it was not the gun used in the shooting.

We first consider defendant's contention that several hearsay statements were improperly admitted into evidence. During cross-examination, White and Sengellu denied telling police officers that the gun in the tavern drawer was the one used in the shooting. A police officer testified that White advised him that the gun in the drawer was the one used in the shooting. Since defendant offered no objection to any of the foregoing questions or answers, he has waived his right to claim error on review. *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

■■ The testimony of the police officers that White had advised them that defendant left the bar for a short time and then returned with the gun and asked the bartenders to hide it was not inadmissible hearsay. The statement was inconsistent with White's prior testimony and was admissible for impeachment purposes. It was error to allow a police officer to testify that White told him it was normal procedure, when police officers were coming, for patrons to give their weapons to the bartenders. This was hearsay, but its admission was not prejudicial to defendant. Defendant also argues that in his closing argument the prosecutor relied on these statements by the police officers for substantive rather than impeachment purposes. We have read the closing argument carefully, and it appears that the prosecutor's comments were properly made for the purpose of

attacking the credibility of the bartenders. The prosecutor's reference to the tavern's custom of having patrons turn in weapons was error, but was not prejudicial to defendant.

Defendant further maintains that the trial court erred by failing *sua sponte* to instruct the jury specifically that these prior inconsistent statements could not be considered as substantive evidence. He correctly asserts that Illinois Pattern Instructions, Criminal, No. 3.11 (1968), given for that purpose, was insufficient. (*People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746.) Defendant, however, failed to either object to the instruction or to tender a more appropriate one. The general rule is that failure to object at trial to an error in jury instructions waives the issue on appeal. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

■■ An exception to the general rule is provided where there were "substantial defects" in the instructions "if the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c).) This exception has been narrowly construed to apply only to the correction of grave errors (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532), or where the case was so close factually that fundamental fairness required the jury to be instructed properly. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) Thus reversal has been required for failure to instruct the jury where a prior inconsistent statement was extraordinarily long and repetitious and where the conviction was based upon such statement (*People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752; *People v. Bacon* (1971), 2 Ill. App. 3d 324, 276 N.E.2d 782), and in the particularly damaging situation where an incriminating statement was made by a co-defendant. (*People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26; *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300.) In the present case there is no reason to depart from the general rule. The statements were not long and repetitious, and this is not a close case factually.

■■ Defendant also maintains that he was denied a fair trial when the police officer was permitted to testify that Hall had identified defendant as the person who did the shooting. We reject the State's position that the statement was offered merely to show why the police officers conducted their investigation as they did. When Hall's testimony is considered as a whole it is apparent that his identification of defendant as the person who did the shooting was offered for its truth, and its admission was error. Nevertheless, since three other eyewitnesses positively identified defendant, the hearsay testimony was merely cumulative and its admission does not require reversal. *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.

Defendant also contends that the trial court committed reversible error when it denied him the right to confront a State's witness with a

prior inconsistent statement. After Pocasangre testified that he did not recall telling anyone that the man who shot him was bald, defense counsel sought to impeach him by asking if he recalled talking to defense counsel's investigator. The basis of the State's objection and the court's reason for sustaining the objection was that a negative answer would require the calling of the investigator as a witness. In exchange for the investigator's exemption from a witness exclusion order, defense counsel had assured the court that the investigator would not testify.

Exclusion of witnesses from the courtroom is a time honored practice. Nevertheless, it is within the sound discretion of the trial court to permit a witness to testify even though he has violated an order excluding witnesses. (*People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) The exercise of that discretion will not be disturbed on review unless it can be shown that the party offering the witness was deprived of material testimony without his fault. *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617.

■■ While defendant made no offer of proof as to what the investigator's testimony would have been, even if we were to assume that he would have testified that Pocasangre described his assailant as bald, defendant was not prejudiced by the exclusion of that testimony. Pocasangre did not describe or identify defendant at trial, and the prior statement would not have impeached Pocasangre. Nor could the statement serve to impeach the testimony of the three eyewitnesses who identified defendant as the assailant.

We next consider defendant's contention that various comments of the prosecutor during closing argument deprived him of a fair trial. Defendant argues that the prosecutor made improper references to his failure to testify, and that the prosecutor improperly accused defense counsel of conducting an odious cross-examination and of presenting a sham defense.

A prosecutor has wide latitude during closing argument and the trial court's determination as to the propriety of the argument will not be overturned on appeal absent a clear abuse of discretion. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) Even where prosecutorial comments are improper the defendant must show a reasonable possibility that the questionable language, in light of all the evidence, was a material factor in his conviction. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.) The appropriate test for determining whether a prosecutorial remark violated defendant's right to remain silent is whether the reference was intended or calculated to direct the attention of the jury to defendant's failure to testify. *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.

■■ In the present case, defendant complains that the prosecutor, in

stating that the three eyewitnesses testified and were cross-examined, was commenting on defendant's failure to testify. The prosecutor actually was responding to defense counsel's remark that the three witnesses had something to hide because they refused to speak to him or his investigator prior to the trial. Defendant complains of another similar remark by the prosecutor that McCalla took the stand to be questioned and cross-examined. Shortly thereafter, the prosecutor asked, "Where is Mr. Hall?" Apparently he was drawing the jury's attention to defendant's failure to call a key witness. Defendant was not the only one to whom the comment could have referred. (*People v. Mills.*) Defendant also complains of the prosecutor's frequent use of the terms "uncontradicted" and "undisputed," with regard to certain factual evidence. A mere reference to the uncontradicted nature of the State's case is permissible, however, even where the only person who could have contradicted the State's case was defendant (*People v. Mills*), so long as it was not intended or calculated to direct the jury's attention to defendant's failure to testify. (*People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.) We do not believe that these comments were so intended.

■■ The prosecutor's characterization of trial counsel's manner of cross-examination was merely a response to the defense statements that the State's witnesses had refused to talk to defense counsel. The characterization was not so inflammatory as to prejudice the jury. Similarly, the prosecutor's comment about defense counsel's trial tactics, unlike the lengthy attack made by the prosecutor in *People v. Polenik* (1950), 407 Ill. 337, 95 N.E.2d 414, was not so derogatory as to antagonize the jury against defendant and his attorney. In sum, the prosecutor's closing argument did not deprive defendant of a fair trial.

■■ We next consider defendant's attacks on his conviction for armed violence. Relying on the trial court decision in *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, he maintains that the armed violence statute is unconstitutional as overreaching and punishing too severely acts not justifying such punishment. Although the supreme court in *Haron* found it unnecessary to reach this issue on review, this court recently has upheld the constitutionality of the penalty provisions of the armed violence statute. (*People v. Pace* (1981), 100 Ill. App. 3d 213, 426 N.E.2d 983; *People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281.) We find no reason to depart from that conclusion.

■■ Defendant also argues that the armed violence conviction is invalid because the complaint failed to allege the essential elements of the crime. Armed violence is defined as the commission of any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) Count 5 charges that defendant, while armed with a dangerous weapon, com-

mitted a battery on Pocasangre and intentionally caused him great bodily harm. The commission of a simple battery while armed with a dangerous weapon would not constitute armed violence because battery is a misdemeanor, but the additional charge that defendant thereby caused great bodily harm serves to charge defendant with aggravated battery which is a felony. Count 5 adequately advised defendant of the nature of the charge so that he could prepare a defense and was sufficiently specific to serve as a bar to future prosecution for the same conduct. *People v. Harvey* (1973), 53 Ill. 2d 585, 294 N.E.2d 269.

■■ We next address defendant's contention that he was improperly sentenced for both aggravated battery and armed violence since both convictions arose from the same act. He correctly asserts that where a defendant is charged with multiple offenses arising from a single act he can be convicted and sentenced only on the more serious offense. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) In the present case the single act of shooting Pocasangre in the hand was the basis of both the armed violence and the aggravated battery convictions. (*People v. Johnson* (1981), 101 Ill. App. 3d 1060, 428 N.E.2d 1133.) Thus both convictions cannot stand, and we vacate the convictions for aggravated battery. In so holding, we recognize that this court has held that multiple convictions are proper for armed violence and the underlying offense when the latter may be committed without possession of a dangerous weapon. (*E.g., People v. Best* (1981), 97 Ill. App. 3d 1083, 424 N.E.2d 29.) We adhere, however, to our holding in *People v. Johnson*.

■■ We next consider defendant's contention that the evidence was insufficient to sustain a conviction for either count of aggravated battery because the State failed to prove that he intentionally fired the shot which struck Pocasangre. Although we have vacated the aggravated battery convictions, this issue must be resolved since the armed violence conviction was based on the commission of aggravated battery. While intent is an essential element in a conviction for aggravated battery, intent may be inferred from the acts and circumstances surrounding defendant's conduct. (*People v. Barrington* (1973), 15 Ill. App. 3d 445, 304 N.E.2d 525.) In the present case witnesses for the State testified to words and actions by defendant from which the jury could have concluded that defendant had the requisite mental state.

We need not address defendant's contention that the evidence was insufficient to support the count of aggravated battery which was based on permanent disfigurement. We have vacated the convictions for aggravated battery and the trial court's finding of great bodily harm was sufficient to support a conviction for armed violence.

For the reasons stated, the judgment of the circuit court of Cook County as to armed violence is affirmed. The judgments as to aggravated battery are vacated.

Affirmed in part, vacated in part.

WHITE, P. J., and RIZZI, J., concur.