THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MILE GVOJIC, Defendant-Appellant.

First District (5th Division) No. 83—1965

Opinion filed September 11, 1987.

Warsawsky, McNeal & Associates, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Elizabeth Loredo Rivera, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

After a bench trial, defendant, Mile Gvojic, was convicted of attempted murder and aggravated battery. Subsequently, he was sentenced to a term of eight years' incarceration. In this appeal, defendant asserts that the evidence presented by the State failed to prove his guilt beyond a reasonable doubt, that his conviction for aggravated battery based on the use of a deadly weapon was legally inconsistent with the trial court's finding that the knife allegedly used was not a "dangerous weapon" and that aggravated battery is a lesser included offense of attempted murder when based on the same act and his conviction for both offenses was improper.

Complainant, James Essary, testified that at 4:10 a.m. on January 22, 1981, he was off duty from his position as a patrolman for Calumet City, Illinois, at the time that he and his brother, Keith Essary, left a tavern located in Burnham, Illinois. As the Essarys were leaving the tavern, defendant and his companion, Russell Jehze, were being refused admission into the tavern by two bouncers who stood at the door with John Smierciak, a free-lance photographer who took photographs at the tavern. Complainant told defendant and Jehze, "You might as well go. They are not going to let you in." Jehze spat on complainant and raised his fist at him. Complainant then pushed Jehze and held him against a wall until Jehze agreed that the altercation had terminated. Complainant and Keith then left to go to complainant's car in the parking lot, but Jehze then became involved in an altercation with Keith. Complainant pulled Keith away from Jehze. Complainant and Keith proceeded to walk in different directions to the complainant's vehicle.

After the complainant had entered his automobile and started the

engine, defendant approached the driver's side of the car and stated that he wanted to talk to complainant. When complainant lowered his window, defendant "cursed," "yelled," then reached into the vehicle and struck complainant, who attempted to close his window, open the door and exit the car. During the ensuing struggle at the door, defendant repeatedly stabbed complainant with a knife until the blade broke in complainant's skull. John Smierciak arrived and struggled with defendant over the knife while complainant lay on the car. Defendant fled from the scene and Smierciak assisted complainant, who had been stabbed on his hand, chest, collar bone, head, lungs and throat. Complainant was hospitalized for 10 days, during which time the broken blade was removed from his skull.

John Smierciak testified that in the early morning on January 22, 1981, he and "Bill-the-bouncer" were in the vestibule of a tavern. Defendant and Russell Jehze "banged" on the glass door and the bouncer told them that the tavern was closed. Complainant and his brother, Keith Essary, then left the tavern and had a confrontation with defendant and Jehze. When complainant and Keith walked away, Jehze spat on Keith, who then turned and fought Jehze. Complainant restrained Keith and the two brothers proceeded from the scene. Jehze was unconscious and bled profusely while attended to by defendant. After Jehze had been revived, defendant walked towards complainant's car and wrestled with complainant, who sat in the car. When Smierciak arrived at the vehicle, the combatants were outside the car. Complainant, who was in a "daze," was "covered with blood" and a piece of the broken knife blade embedded in his skull, told Smierciak to disarm defendant. Smierciak wrenched the knife from defendant, who fled from the parking lot. Smierciak then administered to complainant's bleeding throat and chest. Keith Essary arrived, removed a gun from complainant's pants and ran in the same direction in which the defendant had fled. Subsequently, police officers arrived.

Officer John W. Daley testified that in the early morning on January 22, 1981, he was on patrol in his squad car when he received a radio call of an "unconscious person" at a tavern on 141st and Croissant Streets. When he arrived there, Russell Jehze had a head injury but refused assistance. Complainant, who was acquainted with Officer Daley, then called him and the officer observed John Smierciak attempt to separate complainant and defendant, who were wrestling in the parking lot. Officer Daley rushed to the fight scene, where defendant had "pinned" complainant to a car. Complainant, who was bleeding profusely from the head and neck, stated that defendant had

stabbed him. Smierciak attempted to hold defendant, who fled when Officer Daley attempted to take defendant into custody. Officer Daley pursued the defendant, apprehended him, and escorted him back to where complainant and Smierciak were. On their return, Keith Essary, who was distraught, fired a gun at defendant.

It was stipulated that Dr. Kaufman from St. Margaret's Hospital would testify that the tip of the knife removed from complainant's skull was given to the police department and that Cynthia Seeberg, who worked at the crime laboratory, would testify that the tip of the blade matched the broken knife seized from defendant. Also, Michael Boyle, an assistant State's Attorney, testified that the weapon recovered from defendant was a broken buck knife and that when the pieces were joined the blade was 3¹/₈ inches long.

Defendant testified that at 4 a.m. on January 22, 1981, he and Russell Jehze went to a tavern where they were to meet friends, but the bouncer refused to admit them. The bouncer struck Jehze on the head with a flashlight and three other men helped the bouncer "knock" Jehze against a wall. When complainant attempted to strike Jehze, defendant interceded and "someone" struck defendant's head. Defendant then fell and when he attempted to stand, Keith Essary kicked defendant's head and ribs. Defendant denied that he had known Keith prior to the incident. Defendant stated that Keith or complainant had spat on Jehze and that the latter retaliated in kind. Jehze collapsed to the ground as he bled from his mouth. When defendant tried to revive Jehze, someone cut defendant's finger with a knife. Defendant fled to the parking lot to escape his assailants, but "someone" "pinned" defendant to a car. Complainant and two other men beat defendant with "something that felt like a gun." Defendant ran when Officer Daley arrived and did not stop until he fell on ice and injured his head. The police officer then apprehended defendant and returned him to the parking lot. Keith Essary then fired a gun at them. Officer Daley then seized Keith and reprimanded him.

Defendant was transported to a hospital and questioned by police officers. Defendant denied that he saw Russell Jehze spit on complainant, that he had a knife, or that he had attempted to kill complainant.

DeWayne Nelson Fields testified that on January 22, 1981, he and Diana Hastings waited at a tavern where they were to meet defendant and Russell Jehze. The bouncer first conversed with defendant and Jehze, and then pushed Jehze and struck him with a flashlight. Complainant and Keith Essary left the tavern during the confrontation between defendant, Jehze and the bouncer. The next morning, in the presence of defendant's relatives, Fields reported the fight at the

police station.

Tanya Soutar testified that on January 22, 1981, she waited outside a tavern for a friend when defendant and Russell Jehze arrived. The bouncer refused to admit defendant and Jehze and then struck Jehze with a flashlight. Jehze fell and a crowd gathered around him. When defendant tried to assist Jehze and "got blood on his hands," defendant ran to the parking lot. The following morning Soutar spoke with defendant's sister, then reported the incident at the police station.

We must now determine whether the evidence presented by the State was sufficient to prove defendant's guilt. Defendant maintains that his convictions were improper because the State failed to prove that he had acted with the specific intent to kill or overcome his claim of self-defense and that the investigators were biased. In a bench trial, the trial court is the trier of the facts, and it is the function of the trial court to determine the credibility of the witnesses and the weight that should be given their testimony. A reviewing court should not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398.) The elements of the offenses of attempted murder and aggravated battery are different. The offense of attempted murder requires that the accused have the specific intent to commit murder. (*People v. Hancock* (1980), 83 Ill. App. 3d 700, 704, 404 N.E.2d 914.) A person commits an attempt when, with the intent to commit a specific offense, he does any act which constitutes a substantial step toward commission of that offense. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4.) Aggravated battery requires no specific intent. A person who, in committing a battery, intentionally or knowingly causes great bodily harm commits aggravated battery. (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a).) The intent to commit aggravated battery may be determined by examining the circumstances of the crime, the character of the assault, the use of a deadly weapon and other factors. *People v. Mitchell* (1981), 98 Ill. App. 3d 398, 402, 424 N.E.2d 658.

Whether a person has acted in self-defense depends upon the surrounding facts and circumstances and is a question for the trier of fact. (*In re S.M.* (1981), 93 Ill. App. 3d 105, 109, 416 N.E.2d 1212.) A person is justified in the use of force that will cause great bodily harm or death if he reasonably believes that such force is necessary to prevent great bodily harm or imminent death to himself. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Self-defense must be affirmatively raised by a defendant; however, once some evidence is presented on that issue,

the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 673, 450 N.E.2d 1290.) A defendant cannot claim self-defense where the situation he encounters arises from his own conduct. *People v. Andersch* (1982), 107 Ill. App. 3d 810, 819, 438 N.E.2d 482.

In the instant case the evidence presented by the State and accepted as true by the trial court established that after complainant and his brother, Keith Essary, had an altercation with defendant and his companion, Russell Jehze, outside a tavern, complainant proceeded to a parking lot to get his car. After complainant had entered his automobile and started the engine, defendant appeared and cursed complainant, who had lowered his window. A struggle developed during which defendant leaned into the car and repeatedly stabbed the seated complainant about the head, throat, chest and limbs. John Smierciak observed the fight, ran to the combatants and wrestled a knife from defendant and restrained him. Officer Daley arrived and attempted to take defendant into custody, but defendant fled from the scene. After a foot chase, the police officers apprehended defendant.

Although defendant testified that he was in the parking lot when complainant was there, defendant claimed that he was then assaulted by three men, one of whom was complainant. Additionally, defendant denied that he had any knowledge as to what had happened to complainant, that defendant had attacked complainant, or that defendant had a knife. Defendant added that although he knew that Officer John W. Daley was a police officer, defendant fled from the parking lot when Officer Daley arrived to escape defendant's three assailants.

■ In this appeal, defendant now claims that he used the knife in self-defense against complainant, but during trial proceedings defendant denied that he owned or possessed a knife or knew what had happened to complainant. Thus, his positions on self-defense are diametrically opposed and inconsistent. Further, we believe that the serious nature of the injuries complainant sustained at the hands of defendant were sufficient to support defendant's conviction for attempted murder.

■ As to defendant's assertion that he was denied a fair trial because the complainant was an off-duty police officer who was professionally acquainted with the arresting officer and investigators, we note that feelings of bias and the relationship of the witness to a defendant are of material relevance. (*People v. Adams* (1982), 106 Ill. App. 3d 467, 473, 435 N.E.2d 1203.) Further, the partiality of a witness is subject to examination at trial. (*People v. Gonzalez* (1984), 104

Ill. 2d 332, 337, 472 N.E.2d 417.) In entering its decision herein, the trial court considered the evidence presented by the State's witnesses and defendant. Although the evidence established that Officer Daley had occasionally worked with complainant prior to the incident, there was no indication that the nature of their relationship would motivate him to testify falsely in complainant's behalf. The defense witnesses were admittedly friends of defendant. The nature of the witnesses' relationships to defendant solely affected the weight of their testimony. Based on the evidence presented, we cannot conclude that the judgment by the trial court was improper or that the defendant was not proven guilty beyond a reasonable doubt.

Defendant also argues that aggravated battery is a lesser included offense of attempted murder when based on the same act and that his conviction for both offenses was improper. He correctly asserts that where a defendant is charged with multiple offenses arising from the same act, his conviction must be imposed for the most serious crime. (*People v. Bodeman* (1982), 105 Ill. App. 3d 39, 45, 433 N.E.2d 1140.) Although complainant sustained several stab wounds, we believe that the injuries occurred during one attack. Under the circumstances, defendant's conviction for aggravated battery should be vacated since it was a lesser included offense of his attempted murder conviction and both offenses were based on the stabbing of complainant. *People v. Bryant* (1984), 123 Ill App. 3d 266, 276, 462 N.E.2d 780; *People v. Anderson* (1982), 108 Ill. App. 3d 563, 572, 439 N.E.2d 65.

Because of our disposition of these issues, we need not consider defendant's remaining contention.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

SULLIVAN, P.J., and MURRAY, J., concur.