THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES THOMPSON, Defendant-Appellant.

First District (5th Division)    No. 81—1037

Opinion filed April 22, 1983.—Rehearing denied June 2, 1983.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Lawrence R. Stasica, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was convicted in a jury trial of murder, attempted armed robbery, two counts of aggravated battery, and armed violence. He was acquitted of attempted murder. His pretrial motion to suppress statements made by him to police officers was denied. After trial, he was sentenced to a term of 30 years' imprisonment for murder, running consecutively to a prior sentence for an unrelated crime; to an extended term of 50 years for armed violence; and to 10 years for attempted armed robbery. The commitment order concluded with the phrase "Sentences to run concurrent." No sentence was imposed on the aggravated battery conviction.

On appeal, defendant contends that: (1) his statement was the product of police deception and, therefore, inadmissible; (2) the jury was improperly instructed on the law of accountability; (3) the conviction for armed violence predicated on the felony of aggravated battery by use of a deadly weapon was the product of improper enhancement; (4) the extended-term sentence was improperly imposed on the armed-violence conviction; and (5) the commitment order is vague and, therefore, the case must be remanded for a more precise sentencing.

For the reasons hereinafter set forth, we reverse the defendant's conviction for armed violence and remand the case for resentencing.

There is no contention that guilt was not established beyond a reasonable doubt and, therefore, the following factual summary is confined to those relevant to the issues addressed.

Defendant and codefendant, Robert Lowe, were charged by information with armed violence and murder stemming from the shooting death of Edward Kolesiak, with attempted murder, aggravated bat-

tery and armed violence based on the wounding of Gerald Erlandson, and with the attempted robbery of Michael Klasnja. The charges were based on an incident occurring on October 21, 1979, when during an unsuccessful robbery of a tavern, several shots were fired, killing Kolesiak and wounding Erlandson, both tavern patrons. The evidence adduced at trial established that both defendants brandished weapons in the tavern, but that the shots had been fired by Lowe.

On October 22, 1979, defendant was arrested and brought to the police station where he was advised of his rights and then interrogated by four officers. The resulting inculpatory statement was the subject of defendant's motion to suppress. At the suppression hearing each participating officer testified. Officer Katalinic testified that he spoke to defendant in the presence of officers Tosello, Hill and DiGiacomo. He knew defendant from a prior criminal case and had a friendly relationship with him. After greeting defendant, Katalinic advised him of his constitutional rights and defendant replied that he understood them. Defendant never indicated that he did not want to speak, nor did he request an attorney.

An issue at the suppression hearing was whether defendant's statement to Katalinic was induced by promises and threats regarding the death penalty. Katalinic denied that he threatened defendant by telling him that if he refused to talk he would be charged with murder or that the State would seek the death penalty in his case. He testified, however, that he told defendant he might be eligible for the death penalty. Precisely, Katalinic stated:

"I said that when a person was involved in a murder while in the commission of a forcible felony, that the death penalty is in order. I didn't refer to \*\*\* shooter or non-shooter. I just said a person, when committing a forcible felony. I didn't break it down to shooter or non-shooter."

Katalinic further advised defendant:

"\*\*\* I said \*\*\* the new law had been written in and while in the commission of a forcible felony someone meets their [sic] death that it could be punishable by death."

Katalinic testified that he knew that the investigation indicated that Lowe, and not defendant, probably was the one who actually fired the fatal shot. He stated that he also knew that under the law, only the "shooter" in a felony murder is eligible for the death penalty. It was after Katalinic discussed the death penalty in the above manner that defendant recounted his involvement in the incident.

Officer Tosello testified that defendant received two sets of *Miranda* warnings and that defendant never requested an attorney or in-

dicated he wished to cease speaking. Katalinic was the only officer who questioned defendant, the last conversation lasting 45 minutes to an hour and occurring at 7 or 7:30 p.m. Tosello heard Katalinic say "in substance" that "the death penalty was possible for a crime of this nature." He heard Katalinic make no promises to defendant of any kind. Tosello recalled that five minutes into the interrogation defendant stated his involvement in the case.

Officers DiGiacomo and Hill testified. DiGiacomo heard Katalinic say to defendant, "this is a felony murder and a felony murder is a capital punishment case." Hill testified that after Katalinic mentioned defendant's rights, Katalinic spoke to defendant for a minute or two about the death penalty. Katalinic told defendant "the case *** was a capital case" and "the people that [sic] committed this could be" given the death penalty. Both officers testified that no threats or promises were made to defendant by any police officers present.

Defendant testified. According to defendant, none of the officers advised him of his right to have an attorney present. He testified, however, that he was asked if he understood his rights and that he told the officers that he did and that he wished to phone his lawyer, but that Tosello refused to permit such a phone call. According to defendant, Tosello also repeatedly told him that if he "refuse[d] to cooperate with him that he would seek the death penalty case," and that defendant would be charged with murder and that he would not be so charged if he agreed to cooperate with the police.

Opinion

■■ Defendant first contends that the police officers knowingly misled him into believing that the death penalty was a possible sentence in his case when it was not, thus rendering his subsequent disclosures involuntary as the product of police deception and cajolery. We find it unnecessary to discuss at length this contention since we reject defendant's premise that the death penalty was not a possible sentence in his case. In *People v. Ruiz* (1982), 94 Ill. 2d 245, our supreme court held that section 9—1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)) (effective since 1977) does not remove accountability convictions as a foundation for the death penalty despite the fact that the murdered individual was not actually killed by the accused. Accordingly, the sole fact that defendant was not the "shooter" in this case clearly did not exclude the *possibility* of the imposition of the death penalty, assuming an intent to take the life of the victim could be inferred from defendant's acts and the circumstances of the crime. (See 94 Ill. 2d 245, 261.) Thus, we find that

the officer's general reference to the possible imposition of the death penalty for the acts resulting in the death of the victim in this case conforms to the settled law of this State. Accordingly, we reject defendant's contention that the officers knowingly cajoled him into speaking by referring to the death penalty where such a penalty was, categorically, a possible sentence applicable to him in this case.

■ Next, defendant contends that the trial court misstated the law of accountability when orally answering a question posed to it by the jury. After the trial court's oral instruction, defendant generally objected, stating, "Judge, I object to that instruction to the jury at this time." Where a defendant fails to articulate the specific grounds for his objection, and that objection is overruled, the issue is not preserved for review on appeal. (*People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Bivens* (1981), 101 Ill. App. 3d 8, 427 N.E.2d 791.) By making a general objection, defendant did nothing to guide the court in its judgment nor point out what specifically was objectionable, and his objection was, therefore, not preserved for review. Furthermore, defendant's written post-trial motion for a new trial failed to specify any legal defect in the court's instruction to the jury. The failure to state specific legal grounds in support of the claimed error in a motion for a new trial ordinarily results in waiver of that error on appeal. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Turk* (1981), 101 Ill. App. 3d 522, 428 N.E.2d 510.) Under the foregoing principles, since defendant did not specify grounds for his objection at trial or in his post-trial motion, the issue is deemed waived.

Next, defendant contends that his conviction for armed violence was predicated on the felony of aggravated battery by use of a deadly weapon and was, therefore, the product of improper enhancement. We agree. The information charged that defendant "committed the offense of armed violence in that [he], while armed with a dangerous weapon, to wit: a gun, committed a felony defined by Illinois law, to wit: aggravated battery, in that [he], intentionally and knowingly without legal justification caused bodily harm to Gerald Erlandson, by shooting him in the knee with said gun in violation of Chapter 38, section 33A—2 Illinois Revised Statutes." In *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, our supreme court held that the use of a dangerous weapon which serves to enhance a charge of battery to aggravated battery may not also serve to further enhance the latter charge to armed violence. Accord, *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987; *People v. Waelterman* (1983), 112 Ill. App. 3d 483.

The State contends that *Haron* is inapplicable since the information contained two possible predicate counts of aggravated battery, one based on the infliction of "great bodily harm" and the second based on the use of a "deadly weapon." The State concludes that since the jury's general verdict did not indicate the particular felony upon which it was based, under the decision in *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955, it is to be presumed that the armed violence verdict was properly based on the underlying felony of aggravated battery based upon great bodily harm. We find *Ross* distinguishable, however, from the instant case. There, although the question before the court closely resembled the issue raised herein, the count of armed violence did not indicate whether the battery was aggravated by the "great bodily harm" or the "deadly weapon." The instant count, however, omits reference to *"great"* bodily harm but it does refer to a "shooting" with a "gun," and thus, in our view, appears to be factually predicated upon the use of a "deadly weapon." Moreover, in *Ross*, there was evidence that the defendant had struck the victim in the right cheek with the butt of his rifle before the shooting, and thus the appellate court found there was sufficient proof of the commission of aggravated battery based upon infliction of bodily harm.

■ Our supreme court has stated: "[T]he requirement of section 33A—2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the *presence of a weapon*." (Emphasis added.) (*People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627, 634.) In the instant case, unlike *Ross*, we do not find the charge—or the proof—sufficiently supports the State's contention that defendant's conviction was properly predicated on the felony of aggravated battery for infliction of great bodily harm. Rather, it is the presence of the gun, *i.e.*, a dangerous weapon, that is the gravamen of the aggravated battery offense presented here. Thus, under the *Haron* rule, where the charge of armed violence is predicated upon aggravated battery based upon use of a deadly weapon, the charge is defective and cannot stand, and defendant's conviction for armed violence must, therefore, be reversed.

Defendant next seeks review of the extended-term sentence imposed upon his conviction for armed violence. Our reversal of his conviction for armed violence, however, obviates the requirement to review this sentence which must be vacated. We note that since no sentence was imposed on the predicate aggravated battery conviction, the State may, on remand, request sentencing for this conviction.

■ Finally, defendant has urged that the instant commitment order requires more precision. We agree. Where the order fails to clearly define the limits of sentences intended to run consecutively, the cause must be remanded for reimposition of sentences. (*People v. Logan* (1974), 23 Ill. App. 3d 41, 318 N.E.2d 94.) We find it difficult to ascertain the precise meaning of the instant order imposing both consecutive and concurrent sentences. We therefore reverse defendant's conviction for armed violence and remand this cause for resentencing in accordance with the views expressed herein.

Reversed and remanded.

WILSON, P.J., and LORENZ, J., concur.