**UNITED STATES of America ex rel. Daniel VANSKIKE, Petitioner,**

v.

**Michael O'LEARY, Michael P. Lane, and Neil F. Hartigan, Respondents.**

No. 88 C 9682.

United States District Court, N.D. Illinois, E.D.

June 16, 1989.

Standish E. Willis, Federal Defender Program, Chicago, Ill., for respondents.

Michael J. Singer, Asst. Atty. Gen., Chicago, Ill., for petitioner.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Daniel Vanskike has petitioned this court for a writ of habeas corpus claiming that the Circuit Court of Randolph County, Illinois convicted him of a crime that does not exist under the laws of Illinois. The state has moved to dismiss the petition arguing (1) Vanskike has not exhausted his state court remedies, (2) his claim is not a constitutional claim cognizable in a federal habeas corpus petition, and (3) Vanskike was convicted of a crime existing under the laws of Illinois. If correct, any of these grounds would be a sufficient basis for denying relief. Although exhaustion should usually be resolved before considering the merits of a habeas petition and although the second argument might also logically—or procedurally—precede the third argument, the first two arguments can be better understood if the third argument—the question of whether Vanskike was convicted of armed violence as defined by Illinois statute—is resolved.

### I. Elements of Armed Violence

On April 20, 1978, Vanskike, then incarcerated at Menard Correctional Center, stabbed another inmate in the chest with a knife made of sharpened wire. On July 12, 1978, a three-count amended information was filed charging the following offenses.

### COUNT I

AGGRAVATED BATTERY in that the said defendant, in committing a Battery, in violation of Illinois Revised Statutes, Chapter 38, Section 12–3, without legal justification and while armed with a deadly weapon, a homemade knife, intentionally caused bodily harm to Donald Tharp, in that he stabbed Donald Tharp in the chest in violation of Illinois Revised Statutes, 1977, ch. 38, sec. 12–4(b)(1).

### COUNT II

ARMED VIOLENCE in that the said defendant, while armed with a dangerous weapon, a homemade knife, performed acts prohibited by Illinois Revised Statutes, Chapter 38, Section 12–4(b)(1) in that he intentionally and without legal justification stabbed Donald Tharp in the chest, thereby causing bodily harm to Donald Tharp in violation of Illinois Revised Statutes, 1977, ch. 38, sec. 33 A–2.

### COUNT III

ATTEMPT (MURDER) in that the said defendant, with the intent to commit the offense of Murder, in violation of Illinois Revised Statutes, Chapter 38, Section 9–1(a)(2), performed a substantial step toward the commission of that offense in that he without lawful justification stabbed Donald Tharp in the chest with a homemade knife knowing such act created a strong probability of death to

Donald Tharp in violation of Illinois Revised Statutes, 1977, ch. 38, sec. 8–4(a). R. I 11C–12C.[1]

At the time the relevant Illinois statutes provided:

*Ill.Rev.Stat. (1977), ch. 38, ¶ 12–3(a)(1)—Battery*

(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual....

*Ill.Rev.Stat. (1977), ch. 38, ¶ 12–4(a)—Aggravated Battery*

(a) A person, who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery.

*Ill.Rev.Stat. (1977), ch. 38, ¶ 12–4(b)(1)—Aggravated Battery*[2]

(b) A person who, in committing a battery ...:

(1) Uses a deadly weapon ... commits aggravated battery.

*Ill.Rev.Stat. (1978), ch. 38, ¶ 33A–2—Armed Violence*[3]

A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law.

On the state's motion, the attempt murder charge was dismissed the day of trial. With respect to armed violence and aggravated battery, the jury was instructed as follows:

A person commits armed violence when, while armed with a dangerous weapon, he intentionally commits aggravated battery.

To sustain the charge of armed violence, the State must prove the following propositions:

First: That the defendant knowingly or intentionally caused bodily harm to Donald Tharp; and

Second: That the defendant used a deadly weapon; and

Third: That the defendant was not justified in using the force he used.

\* \* \* \* \* \*

To sustain the charge of aggravated battery, the State must prove the following propositions:

First: That the defendant knowingly or intentionally caused bodily harm to Donald Tharp; and

Second: That the defendant used a deadly weapon; and

Third: That the defendant was not justified in using the force he used.

\* \* \* \* \* \*

A person commits the crime of battery who by any means knowingly or intentionally causes bodily harm to another person.

A person commits the crime of aggravated battery who, in committing a battery uses a deadly weapon.

R. I 41C–43C, 45C–46C. *The jurors may also have been shown Counts I and II of the information since it is referred to in the instructions. See R. I 38C.*

On August 29, 1978, the jury found Vanskike guilty of both aggravated battery and armed violence. The aggravated battery conviction was vacated on the state's motion. *See* Exh. B 3. On October 19, 1978, Vanskike was sentenced to twenty years' imprisonment to run consecutive to the 80–to–135–year sentence he was already serving on unrelated charges. Vanskike's conviction was affirmed on direct appeal, *People v. Vanskike*, 79 Ill.App.3d 1204, 38 Ill.Dec. 126, 403 N.E.2d 141 (5th Dist.1980), and leave to appeal was denied on May 29, 1980. On June 4, 1981, the

---

**1.** The state court record includes two volumes of trial court records that contain transcripts and pleadings from Vanskike's trial and post-conviction proceedings. These volumes will be referred to as "R. I" and "R. II." The state has also provided an appendix of appellate briefs and rulings. These will be referred to as "Exh. A", "Exh. B", etc.

**2.** Although various amendments to § 12–4 have occurred since 1978, there has been no substantive change to the particular provisions relevant to the issues in the present case.

**3.** Prior to February 1, 1978, § 33A–2 enumerated specific felony statutes including § 12–4. Battery in violation of § 12–3(a)(1) is a Class A misdemeanor.

Illinois Supreme Court held in another case that, under § 33A–2, use of a weapon could not result in a double enhancement by enhancing battery into aggravated battery and also enhancing aggravated battery into armed violence. *People v. Haron*, 85 Ill.2d 261, 52 Ill.Dec. 625, 632, 422 N.E.2d 627, 634 (1981). As is more fully set forth below, Vanskike has been unsuccessful in finding a forum in the state court for vacating his armed violence conviction.

The parties agree that *Haron* was decided solely on the basis of statutory construction. The state does not dispute that, given the proper forum, *Haron* is the law applicable to Vanskike's 1978 conviction. The state also agrees that, under Illinois law, an armed violence conviction can never be based on the predicate offense of aggravated battery with a deadly weapon in violation of § 12–4(b)(1). The state, however, cites *People v. Harris*, 146 Ill.App.3d 632, 100 Ill.Dec. 297, 300, 497 N.E.2d 177, 180 (2d Dist.1986), for the proposition that armed violence can be based on the predicate offense of § 12–4(a) aggravated battery. Section 12–4(a) converts battery into aggravated battery as a result of *great* bodily harm; use of a weapon is not a necessary element of the offense. Thus, enhancing such an offense into armed violence because a weapon was used would not be enhancement twice based on use of a weapon. Other Illinois appellate courts have reached the same conclusion as in *Harris*, see *People v. Carrillo*, 148 Ill.App.3d 11, 101 Ill.Dec. 677, 678, 499 N.E.2d 44, 45 (3d Dist.1986), *leave to appeal denied*, 113 Ill.2d 578, 106 Ill.Dec. 50, 505 N.E.2d 356 (1987) (collecting cases), as has the Illinois Supreme Court, but without discussion. *See People v. Donaldson*, 91 Ill.2d 164, 61 Ill.Dec. 780, 783, 435 N.E.2d 477, 480 (1982).

Vanskike, though, was not charged with § 12–4(a) aggravated battery based on great bodily harm; the information does not use the words "great bodily harm" nor specify the injury suffered and the jury was not instructed that it had to find great bodily harm. The state argues, however, that the evidence clearly shows great bodily harm and therefore Vanskike's armed violence conviction can be upheld based on a predicate offense of § 12–4(a) aggravated battery. Illinois law, however, is clearly to the contrary. *People v. Hanson*, 138 Ill. App.3d 530, 92 Ill.Dec. 901, 904–05, 485 N.E.2d 1144, 1147–48 (5th Dist.1985); *People v. Bragg*, 126 Ill.App.3d 826, 81 Ill.Dec. 882, 888–89, 467 N.E.2d 1004, 1010–11 (1st Dist.1984); *People v. Thompson*, 114 Ill. App.3d 662, 70 Ill.Dec. 285, 289, 449 N.E.2d 159, 163 (1st Dist.1983); *People v. Gresham*, 104 Ill.App.3d 81, 59 Ill.Dec. 868, 871–72, 432 N.E.2d 654, 657–58 (4th Dist. 1982). *See also People v. Van Winkle*, 88 Ill.2d 220, 58 Ill.Dec. 736, 737, 430 N.E.2d 987, 988 (1981). If an information alleges § 12–4(b)(1) aggravated battery or aggravated battery based on use of a deadly weapon, a conviction for armed violence based on that aggravated battery allegation cannot stand. This is true even if the information refers to § 12–4(b)(1) aggravated battery causing great bodily harm. *See Hanson, supra.* This is also true even if both § 12–4(a) and § 12–4(b)(1) aggravated battery are charged and instructed, but the jury is not required to distinguish on which of those charges it based its verdict of armed violence. *See Thompson, supra; Bragg, supra.* In Vanskike's case, there was no reference to § 12–4(a) nor to great bodily harm. Clearly, Vanskike's armed violence conviction is contrary to Illinois law.

This disposes of the state's argument as to whether Vanskike was convicted of a crime recognized by Illinois law. The implications of the state's argument, however, should be made clear before turning to the next issue. The state's argument principally focuses on the information. However, the defect that existed in the information also existed in the jury instructions. The jury was never instructed that it had to find great bodily harm in order to find Vanskike guilty of armed violence. Though not using this terminology, the state is essentially arguing that it was harmless error to fail to charge or instruct the jury that it had to find beyond a reasonable doubt the necessary element of great bodily harm.

## II. Exhaustion

On direct appeal to the Illinois Appellate Court, one of the arguments presented by Vanskike was summarized by him as: "The evidence at trial was insufficient to support the charge of armed violence. Only if the constitutional protections against double jeopardy were violated could the facts establish the elements of the offense." Exh. E 10. The principal thrust of his argument was double jeopardy, see id. at 10–13, and the corresponding "issue presented" was worded: "Whether the evidence at trial was sufficient to support the charge of armed violence without a violation of the constitutional protections against double jeopardy." Id. at 2. Vanskike did, though, argue as follows:

> The armed violence in the instant case was not, therefore, based on a finding of aggravated battery due to infliction of great bodily harm. The jury, by its verdict, found a simple battery, committed with a deadly weapon. These elements are not sufficient to support the charge of armed violence.

Id. at 12. While not well developed, that paragraph makes the argument now presented to this court. Moreover, the state responded with a more developed argument,[4] see Exh. G at 6–8, and the Illinois Appellate Court reached the issue, ruling

against Vanskike.[5] People v. Vanskike, 79 Ill.App.3d 1204, 38 Ill.Dec. 126, 403 N.E.2d 141 (5th Dist.1980) ("Vanskike I") (reprinted as Exh. B). The state does not provide a copy of Vanskike's petition for leave to appeal, but Vanskike alleges he raised the ground that his "conviction for the Class X offense of armed violence cannot stand where the State has proven only the commission of the misdemeanor of battery, accompanied by use of a dangerous or deadly weapon." Leave to appeal was denied May 29, 1980.

On June 24, 1981, the Illinois Supreme Court issued its ruling in People v. Haron, 85 Ill.2d 261, 52 Ill.Dec. 625, 422 N.E.2d 627 (1981). As discussed above, Vanskike's armed violence conviction is inconsistent with Haron. In June 1981, Vanskike, represented by counsel, moved the Illinois Supreme Court for exercise of supervisory jurisdiction, requesting that his armed violence conviction be vacated and that there be a remand for sentencing on the aggravated battery charge. See Exh. C App. B. The Illinois Supreme Court ruled "The motion for exercise of supervisory jurisdiction is denied without prejudice to the right of defendant to seek relief in the circuit court." People v. Vanskike, No. 53184 (Ill.Sup.Ct. July 30, 1981) ("Vanskike II")

---

4. The state has not provided this court with a copy of Vanskike's reply brief if there was one.

5. In Vanskike I, the Illinois Appellate Court stated "The elements constituting armed violence and aggravated battery are, however, different, and while the difference may be largely theoretical in a given case, the crimes are not identical." Exh. B 3. The court then points out that § 4(b)(1) aggravated battery is based on use of a "deadly weapon" whereas armed violence is based on use of a "dangerous weapon" and that "deadly weapon" and "dangerous weapon" have different definitions. The court then notes that the instruction on armed violence was incorrect in that it is defined as aggravated battery with a "deadly weapon", not with a "dangerous weapon." The court then states, "No objection was made to these instructions, nor does defendant argue that any error in the instructions given constituted plain error requiring reversal. However, defendant cannot be convicted of two criminal offenses by the commission of a single act accompanied by one mental state and the conviction for aggravated battery was appropriately vacated." Id. at 4 (citations omitted). This is understood to mean Vanskike waived an

objection as to the armed violence instruction using "deadly weapon" instead of "dangerous weapon." But even if the appellate court also meant Vanskike never raised an argument that the jury was not instructed properly because armed violence cannot be based on aggravated battery committed with a weapon, the decision in the present case would not be affected. There would still be exhaustion, since, as discussed below, exhaustion was satisfied by the post-conviction proceeding even if not satisfied by the direct appeal. Waiver would not preclude federal habeas corpus relief because (1) the state does not presently raise a waiver argument, see Washington v. Lane, 840 F.2d 443, 446 (7th Cir.) (per curiam), cert. denied, —— U.S. ——, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988); and (2) Illinois courts would not treat the issue as being waived in subsequent proceedings, see People v. Pride, 144 Ill.App.3d 612, 98 Ill.Dec. 387, 389, 494 N.E.2d 509, 511 (1st Dist.1986). As regards the proper elements of armed violence to apply in this case, the analysis contained in § III infra would still apply.

**664**

(reprinted in Exh. C App. B). Vanskike did not immediately follow up on that possibility.[6]

On November 25, 1986, Vanskike filed a *pro se* pleading in the Circuit Court of Randolph County that he labeled a post-conviction petition. Vanskike moved to vacate his armed violence conviction in light of *Haron* and the recently decided *People v. Miller*, 144 Ill.App.3d 69, 98 Ill.Dec. 74, 493 N.E.2d 1095 (5th Dist.), *appeal dismissed*, 112 Ill.2d 588, 115 Ill.Dec. 81, 517 N.E.2d 283 (1986). *Miller* holds that armed violence convictions based on inappropriate predicate felonies are convictions based on a crime that does not exist. The indictments in such a case are void and can be vacated by the circuit court even absent a constitutional violation. The court stated Miller's conviction was not pursuant to the Post–Conviction Hearing Act, but did not specify what procedure it was pursuant to. The state argues here that an Illinois habeas corpus proceeding, *see* Ill.Rev.Stat. ch. 110, ¶ 10–101, *et seq.*, is the appropriate procedure and *Hanson*, 92 Ill.Dec. at 904, 485 N.E.2d at 1147, so indicates. *See also People ex rel. Kelley v. Frye*, 41 Ill.2d 287, 242 N.E.2d 261, 263 (1968); *People ex rel. Harper v. Brantley*, 34 Ill.App.3d 807, 341 N.E.2d 126, 127 (5th Dist.1975). Such a petition may be brought in the Illinois Supreme Court, the circuit court for the county where the petitioner is incarcerated, or the circuit court for the county where the petitioner was sentenced. Ill.Rev.Stat. ch. 110, ¶ 10–103. Thus, the Randolph County Circuit Court would have had jurisdiction over a habeas corpus proceeding and presumably could have construed Vanskike's *pro se* petition as such a proceeding.

Counsel was appointed to represent Vanskike. Counsel apparently did not file any pleadings on Vanskike's behalf, but he appeared on behalf of Vanskike in a hearing on the petition. The state, relying on *People v. Nolker*, 104 Ill.App.3d 159, 60 Ill.

Dec. 258, 432 N.E.2d 1157 (5th Dist.1982), argued Vanskike's claim could not be considered because it was not a constitutional claim. R. II C–38 to C–40. Neither party cited *Miller* at the hearing, but Vanskike's counsel cited *Hanson, Van Winkle*, and *Bragg*. *Id.* at C–38, C–41. The court indicated the case law was unclear, but apparently decided to uphold the conviction on the basis of *Vanskike I*. *Id.* at C–43 to C–44. Different counsel was appointed on appeal. On appeal, it was clearly argued that the armed violence conviction should be vacated as void in light of *Miller*[7] and, alternatively, citing *People v. Kessinger*, 133 Ill.App.3d 831, 88 Ill.Dec. 853, 854, 479 N.E.2d 466, 467 (4th Dist.1985), that there was a constitutional issue that could be reached in a post-conviction proceeding. Exh. D. The Illinois Appellate Court affirmed the circuit court. *People v. Vanskike*, 167 Ill.App.3d 1174, 131 Ill.Dec. 548, 538 N.E.2d 923 (5th Dist.1988) (*"Vanskike III"*) (reprinted as Exh. A). The court described the holdings in *Miller* and *Nolker*, then concluded:

> On appeal, petitioner, relying on *Miller*, contends that the armed violence conviction is void. Petitioner also requests that we overrule our opinion in *Nolker*. We have examined the briefs of the parties and the cases cited herein and re-examined the prior decisions of this court as well as the supreme court decisions on which they are based. We adhere to our prior decision in *Nolker* and affirm the judgment of the circuit court of Randolph County.

*Id.* at 4. Still represented by counsel, Vanskike sought leave to appeal to the Illinois Supreme Court seeking to raise the same issues raised in the appellate court. Exh. C. On October 6, 1988, leave to appeal was denied. *People v. Vanskike*, 122 Ill.2d 591, 125 Ill.Dec. 233, 530 N.E.2d 261 (1988). On November 15, 1988, Vanskike filed his federal habeas corpus petition.

---

**6.** The state does not argue that delay can be a basis for dismissing the petition. *See* Rules Governing Section 2254 Cases Rule 9(a).

**7.** Habeas corpus proceedings were not expressly mentioned. The cases cited by Vanskike, like most cases of that type, simply say a motion to vacate based on a void judgment can be raised at any time without specifically citing to the habeas corpus statute.

■ The state argues that Vanskike has not exhausted his state court remedies because he still has a habeas corpus remedy available in the Illinois courts.[8] As discussed above, it would appear such a proceeding is available for the claim he raises. However, inconsistent with other rulings of the same court, *Vanskike III* implicitly ruled that procedure was not available to Vanskike.[9] Perhaps the courts of the Fifth District would rule differently if Vanskike sought relief there again—or perhaps Vanskike would be more successful if he brought a habeas corpus proceeding in the county where he is incarcerated or directly in the Illinois Supreme Court—, but those are only possibilities. It is the rule in the Seventh Circuit that pursuing collateral proceedings in Illinois is only a necessary element of exhaustion where there is "direct precedent"—meaning clear and similar precedent—that such proceedings are available. *See Gornick v. Greer,* 819 F.2d 160, 161 (7th Cir.1987). *Vanskike III* indicates no further remedy is available. Therefore, Vanskike has exhausted his state court remedies.[10]

■ Even if Illinois habeas corpus proceedings remain available, Vanskike has satisfied the exhaustion requirement. To satisfy the exhaustion requirement, it is only necessary that the state's highest court be given one fair opportunity to consider the issue. *Castille v. Peoples,* — U.S. —, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Wallace v. Duckworth,* 778 F.2d 1215, 1219 (7th Cir.1985) (per curiam). A fair opportunity includes raising the issue in a proper procedural context, *see Castille,* 109 S.Ct. at 1059; *Wallace,* 778 F.2d at 1223; fairly alerting the court to the constitutional nature of the claim, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam); *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir.1984); and fairly presenting the substance of the claim, *Anderson,* 459 U.S. at 6, 103 S.Ct. at 277.

■ On direct appeal, Vanskike raised the issue that armed violence was an inappropriate charge. That argument was not developed at all and would not necessarily satisfy the requirement of a fair presentation of the substance of a claim except that the state responded to the argument and the Illinois Appellate Court ruled on it in *Vanskike I.* Where the court reaches an issue, the exhaustion rule is satisfied. *Cf. Harris v. Reed,* — U.S. —, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (no waiver if state court reaches merits despite existence of procedural default). The question would remain, though, as to whether the issue was properly presented as a constitutional issue. The only constitutional issue raised and addressed was double jeopardy, which is not the constitutional issue raised in the present petition. Vanskike did not argue on direct appeal that convicting him of a crime that did not exist violated due pro-

8. This is inconsistent with the state's position before the courts of Illinois where it argued Vanskike had no available remedy. *See* Exh. F; R. II C–38 to C–39. Such inconsistencies are not condoned. *See, e.g., Gornick v. Greer,* 819 F.2d 160, 162 (7th Cir.1987).

9. In declining to follow *Miller, Vanskike III* implicitly ruled habeas corpus relief was not available. In following *Nolker,* the court also implied that Vanskike's conviction was improper. *See Nolker,* 60 Ill.Dec. at 259, 432 N.E.2d at 1158 ("Although the defendant correctly contends that the armed violence charge resulted from a double enhancement of a misdemeanor by means of an improper statutory construction (*see [Haron]*), this contention presents only a question of an erroneous statutory construction, and as such is not of constitutional magnitude.").

10. This court is applying the presumption discussed in *Gornick* which leads to the conclusion that no further remedy is available. That presumption is applied here for the sole purpose of determining if exhaustion is satisfied. Without applying the presumption, this court would rule, as discussed above, that state habeas corpus proceedings are available. *Vanskike III* would not have a *res judicata* effect to the contrary since the state waived any further *res judicata* effect by taking an inconsistent position in the present proceeding. *Cf.* Restatement (Second) of Judgments § 15 (1982); *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.,* 177 Ill.App.3d 656, 126 Ill.Dec. 738, 742, 532 N.E.2d 423, 427 (2d Dist.1988); *Benton v. Smith,* 157 Ill.App.3d 847, 109 Ill.Dec. 884, 890, 510 N.E.2d 952, 958 (1st Dist.1987); *People v. Kaeding,* 98 Ill.2d 237, 74 Ill.Dec. 509, 512, 456 N.E.2d 11, 14 (1983).

cess. This would seem to be a situation, though, where the state law and constitutional issues are so intertwined that raising the claim as a state law issue would be sufficient. *See Johnson v. United States,* 805 F.2d 1284, 1288 (7th Cir.1986). Also, unlike *Sullivan,* 731 F.2d at 454–55 & n. 10, and the cases cited therein, it is not possible for there to be a constitutional error in the present case without there also being a state law error. This issue will not be resolved because exhaustion is otherwise satisfied.

After failing to obtain reversal of his conviction on direct review, Vanskike moved the Illinois Supreme Court to exercise supervisory jurisdiction. The motion was denied in *Vanskike II.* In that motion, he expressly stated he was raising only statutory grounds, but, as with the direct appeal, this may be sufficient. This motion, however, could not satisfy the exhaustion requirement since it is not a sufficient procedure. *See Castille,* 109 S.Ct. at 1060.

In his post-conviction proceeding, Vanskike raised the same constitutional claim that he raises in his present habeas corpus petition. Exh. D 12; Exh. C 15.[11] In *Vanskike III* the Fifth District adhered to its prior ruling in *Nolker* and held that no constitutional claim was stated.[12] Vanskike fairly presented his present constitutional claim in his post-conviction proceedings and appealed that issue to the state's highest court. Having once presented the claim to the highest court of the state, exhaustion is satisfied.

### III. Constitutional Claim

■ The question still remains as to whether Vanskike is raising a cognizable constitutional claim or only a state law claim. It is clear that only violations of federal law are cognizable under the federal habeas corpus statute. 28 U.S.C. § 2254(a). Two Illinois courts, in cases similar to the present case, held that convicting a person for a crime that does not exist is a violation of constitutional due process. *People v. Kessinger,* 133 Ill. App.3d 831, 88 Ill.Dec. 853, 854, 479 N.E.2d 466, 467 (4th Dist.1985); *People v. Pride,* 144 Ill.App.3d 612, 98 Ill.Dec. 387, 389, 494 N.E.2d 509, 511 (1st Dist.1986). As Judge Posner has stated, "To punish a person criminally for an act that is not a crime would seem the quintessence of denying due process of law." *Johnson,* 805 F.2d at 1288. *See also Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *Cole v. Young,* 817 F.2d 412, 426 n. 9 (7th Cir.1987). *But see id.* at 440 (Easterbrook, J., dissenting). Judge Posner further stated,

> If you argue that Statute X does not make your act a crime, you are making a statutory argument, but in support of a due process claim. This is not because every erroneous statutory interpretation is a denial of due process—a ridiculous proposition. It is because punishing a person for engaging in conduct that the polity has not made criminal is inconsistent with the proposition that state or federal government may not, consistent with the Constitution, deprive persons of life, liberty, or property, except through due process of law.

*Johnson,* 805 F.2d at 1288. This *dictum* from *Johnson* is based on *Davis,* which holds a conviction for an act the law does not make criminal, constitutes "a complete miscarriage of justice" and "exceptional circumstances" that can be raised in proceedings under 28 U.S.C. § 2255. *Davis,*

---

**11.** In the circuit court, the basis for the constitutional claim was not as clearly stated. The appellate court, however, reached the issue of whether a constitutional claim was stated and did not rely on a procedural bar so the issue was adequately raised. *See Harris,* 109 S.Ct. at 1045.

**12.** Reliance on *Nolker,* 60 Ill.Dec. at 259–60, 432 N.E.2d at 1158–59, was somewhat misplaced since *Nolker* addresses neither the *Kessinger* due process argument raised by Vanskike nor the

*Miller* "motion to vacate" argument raised by Vanskike. The merits of the reasoning of the court, however, need not be resolved in determining if exhaustion was satisfied. Also, even if it can be said the Fifth District did not address the *Kessinger* argument, exhaustion is satisfied since the issue was presented to the court. *See Castille,* 109 S.Ct. at 1060 (quoting *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 598–99, 54 L.Ed.2d 582 (1978) (per curiam)).

417 U.S. at 346–47, 94 S.Ct. at 2305. A conviction based on a crime that does not exist is contrary to fundamental constitutional principles. Vanskike's claim is therefore a constitutional claim cognizable in a federal habeas corpus proceeding.

It might be argued that *Davis* and *Johnson* refer to *acts* that are not crimes whereas Vanskike's acts still are crimes in that he committed aggravated battery and possibly armed violence based on § 12–4(a) great bodily harm aggravated battery. Even considering this characterization, a constitutional claim is still stated. As to aggravated battery, it would still be a manifest injustice to punish a person for one crime on the justification that he was proved to have committed a different crime, especially when the crime proven carries a lesser penalty than the crime on which the conviction was obtained.[13] "Under our system of justice even a thief is entitled to complain he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson v. Virginia,* 443 U.S. 307, 323–24, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). As regards armed violence based on § 12–4(a) aggravated battery, the jury was never instructed on the elements of that offense. Unlike the instruction actually given, such an instruction must include the necessary element of great bodily harm. Since the jury was not instructed on a necessary element, a constitutional claim would still be stated. *Cole,* 817 F.2d at 423–24. Also, criminal charges should not become semantical games. Charging Vanskike with a crime labeled "armed violence," does not make a conviction for what the statute properly defines as armed violence any more justified than a conviction for a crime with another name that might have all but one element the same as those explained to the jury. Furthermore, it has been held by the United States Supreme Court and an Illinois appellate court that it violates due process to convict a person of a crime neither charged nor instructed. *Cole v. Arkansas,* 333 U.S. 196, 201–02, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948); *Gresham,* 432 N.E.2d at 657–58. *See also Pres-*

*nell v. Georgia,* 439 U.S. 14, 16, 99 S.Ct. 235, 236, 58 L.Ed.2d 207 (1978) (per curiam).

Finally, and significantly, the Illinois Supreme Court treats such a conviction as a void judgment for which the trial court lacked jurisdiction. *See People v. McCarty,* 94 Ill.2d 28, 67 Ill.Dec. 818, 823–24, 445 N.E.2d 298, 303–04 (1983); *People v. Sierra,* 122 Ill.App.3d 822, 78 Ill.Dec. 245, 248, 461 N.E.2d 1079, 1082 (2d Dist.1984); *People v. Kavinsky,* 98 Ill.App.3d 579, 53 Ill. Dec. 705, 708, 424 N.E.2d 340, 343 (2d Dist.1981); *People v. Waelterman,* 112 Ill. App.3d 483, 68 Ill.Dec. 173, 175, 445 N.E.2d 817, 819 (5th Dist.1983); *Kelley,* 242 N.E.2d at 263. This is significant because, as discussed below, it prevents the original judgment from having any *res judicata* effect. Also, jurisdictional defects are recognized as fundamental errors cognizable in § 2254 proceedings. *Hailey v. Dorsey,* 580 F.2d 112, 115–16 (4th Cir.1978), *cert. denied,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979); *Porter v. Newkirk,* 539 F.Supp. 150, 152 (E.D.N.C.1982). *See also Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *Sunal v. Large,* 332 U.S. 174, 182, 67 S.Ct. 1588, 1592–93, 91 L.Ed. 1982 (1947).

Though not cited by either party, a recent Seventh Circuit case requires pause. *See Jones v. Thieret,* 846 F.2d 457 (7th Cir.1988). In that case, Johnnie Jones was found guilty in an Illinois state court on eight counts, including felony theft and armed violence. Under Ill.Rev.Stat. ch. 38, ¶ 1005–5–3.2(b), the sentencing court imposed enhanced sentences of 60 years on the felony theft and armed violence counts. Jones contested the sentencing court's interpretation of the requirements of the enhancement statute, but he was unsuccessful on appeal. Two years later, in an unrelated case, the Illinois Supreme Court construed the statute in the manner Jones had urged. No relief was available in a state court. Jones sought federal habeas corpus relief. The district court, relying on *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct.

---

**13.** Aggravated battery is a class 3 felony. Ill. Rev.Stat. (1977), ch. 37, ¶ 12–4. Armed violence is a class X felony. Ill.Rev.Stat. (1978), ch. 38, ¶ 33A–3(a).

2781, 61 L.Ed.2d 560 (1979), granted relief on the theory that not all elements of the sentence enhancement had been proven beyond a reasonable doubt. The Seventh Circuit reversed on the ground that Jones presented only state law claims.

*Jones* relies heavily on the court being bound to follow Illinois law as interpreted by the Illinois courts. *Jones* concludes that Illinois law as stated by the Illinois Appellate Court in a published opinion on Jones's direct appeal was the applicable state law, not contrary law stated two years later by the Illinois Supreme Court. *Jones* gives three reasons for this conclusion. One is that no further avenue of review was available to Jones in state court. *See Jones,* 846 F.2d at 461. Another is the general rule that a federal court should follow state court precedent in interpreting state law. *See id.* (citing *Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 1428–29, 99 L.Ed.2d 721 (1988); *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 238, 61 S.Ct. 179, 184, 85 L.Ed. 139 (1940)). The last is that *res judicata* made the Appellate Court decision binding on the parties in any later litigation. *See id.* (citing *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Frank v. Mangum,* 237 U.S. 309, 333–34, 35 S.Ct. 582, 589–90, 59 L.Ed. 969 (1915)).

None of these reasons points to *Vanskike I* being the construction of the armed violence statute to apply. Unlike the situation in *Jones,* Vanskike still may have an available remedy through habeas corpus review. As discussed above, *Vanskike III* ruled to the contrary, but the state has conceded before this court that that avenue is available, and, as discussed above, that concession is consistent with Illinois precedent.[14] Further, *Vanskike III*'s holding as to the availability of an avenue of relief is not binding. Since unpublished, it is not binding precedent, Ill.Rev.Stat. ch. 110A, ¶ 23, and, as discussed in note 10 *supra,* has no preclusive effect. In any event, not

having further avenues of relief is not a determinative factor, *see Jones,* 846 F.2d at 461; more important is the question of what is the controlling state law, *see id.* at 463. As stated earlier, the state concedes that *Haron* is the law applicable to this case. Even if that concession were not made, it is clear that that is what the law is in Illinois. *See Pride,* 98 Ill.Dec. at 389, 494 N.E.2d at 511. Consistent with *Jones,* this court should follow Illinois law in determining what the applicable law is for Vanskike's charges. *See also Cole,* 817 F.2d at 419. Under Illinois law, it is the construction of the armed violence statute stated in *Haron* and its progeny that controls. *Pride, supra.*

*Jones* relies in part on *res judicata* principles. In determining the preclusive effect of a state court judgment, a federal court gives a state court judgment the same preclusive effect the rendering court would give to the judgment. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Under Illinois law, a void judgment has no *res judicata* effect. *People v. Kidd,* 398 Ill. 405, 75 N.E.2d 851, 854 (1947); *People v. Crislip,* 20 Ill.App.3d 175, 312 N.E.2d 830, 833 (5th Dist.1974); *Hays v. Louisiana Dock Co.,* 117 Ill.App.3d 512, 72 Ill.Dec. 687, 692, 452 N.E.2d 1383, 1388 (1983). Since Vanskike's conviction was void and a nullity, *see McCarty, supra; Sierra, supra; Kavinsky, supra; Waelterman, supra; Kelley, supra, Vanskike I* has no *res judicata* effect on the issue of the elements of armed violence.

*Jones* also relies on *Hicks, supra,* and *West, supra.* Those cases refer to the situation where the intermediate appellate state court has ruled in a related case between the parties and the state's highest court has denied review. In that situation, a federal court should not speculate on how the state's highest court might rule in the future, but instead should treat the intermediate court's ruling as the applicable

---

**14.** For purposes of exhaustion, it can be *presumed* state habeas corpus proceedings are not available. *See Gornick,* discussed *supra.* That, however, is only a presumption applicable to

exhaustion analysis and, as discussed above, exhaustion is satisfied even if state habeas corpus proceedings are still available.

state law. The situation referred to in *Hicks* and *West,* however, is one where the state's highest court has not yet ruled on the issue and any ruling "remains a matter of conjecture." That is not the present situation. Subsequent to denying leave to appeal *Vanskike I,* the Illinois Supreme Court reached the exact same issue in *Haron.* Conjecture and speculation is not necessary; it is clear how the Illinois Supreme Court would rule. *Haron* makes abundantly clear that *Vanskike I* is not the law of Illinois. The rule of *Hicks* and *West* does not apply to the present case.

In *Jones,* it was necessary to distinguish *Cole,* 817 F.2d at 423–24, which held that failure of a state court to instruct the jury on a necessary element of a crime is a constitutional claim cognizable in federal habeas corpus proceedings.[15] *Jones* distinguished *Cole* on the ground that the relevant state ruling in *Cole* was not "reasoned." *See Jones,* 846 F.2d at 461. In *Cole,* a 1978 Wisconsin Supreme Court opinion had held that great bodily harm was a necessary element of a mayhem charge. When Cole was tried in 1981, however, a pattern jury instruction not containing that element was used without objection from Cole. On direct appeal, Cole cited the 1978 opinion, but the Wisconsin Court of Appeals, in an unpublished opinion, denied relief, apparently on the ground that the instruction had not been objected to. The Wisconsin Supreme Court denied review. In federal court, the state declined to press the waiver argument available to it. The Seventh Circuit held that the 1978

opinion was the source to look to for the state law definition of the elements applicable at Cole's trial because the opinion on Cole's direct appeal had not addressed the merits of that issue. Following state law as defined by the state courts, the Seventh Circuit held the jury had not been instructed on all necessary elements of the crime of mayhem and that Cole was therefore entitled to a grant of the writ.

In the present case, *Vanskike I* reached the merits of the elements of the crime of armed violence. However, as previously stated, it is not a binding interpretation of state law as recognized by the state courts. Absent special circumstances, post-*Haron* decisions in Vanskike's proceedings would be definitive statements of the proper elements of armed violence to apply in the present proceeding. *Vanskike II,* a ruling expressly stating that it was without prejudice to further proceedings, does not reach the merits of that issue. *Vanskike III* also does not reach the merits of the issue. *Vanskike III* ruled that Vanskike's claim could not state a constitutional claim and therefore there was no available procedure for Vanskike and it was unnecessary to determine the appropriate elements of his crime. If that court had reached the elements issue, this court would have been required to follow it.[16] The court, however, did not reach that issue and this court is not bound by *Vanskike III*'s analysis of what states a constitutional claim. *See Jackson,* 443 U.S. at 307, 99 S.Ct. at 2783. Consistent with *Cole,* and *Jones*[17] as well,

15. Judge Easterbrook, the author of *Jones,* vigorously dissented in *Cole* disagreeing with both the final conclusion and the majority's interpretation of state law. This court, of course, is bound to follow both *Cole* and *Jones.*

16. As previously pointed out, to the extent *Vanskike III* considered the proper elements for armed violence, it implied that Vanskike's jury had been improperly instructed. *See* note 9 *supra.*

17. *Jones* assumes the state appellate court decision in Jones's case is *res judicata* and the binding law. Also, the state appellate decision was published. In the present case, the court has examined the particular circumstances and Illinois law to determine what state law the Illinois courts would consider applicable and binding.

This court does not decline to apply the elements of the crime stated in *Vanskike I* simply because this court believes *Vanskike I* was wrong or simply because the Illinois Supreme Court subsequently overruled *Vanskike I* on that issue. Such holdings would be clearly contrary to *Jones* and inconsistent with *Cole.* This court finds *Vanskike I* not controlling because Illinois law treats it as a void judgment with no precedential or preclusive effect. Thus, today's ruling is narrow. It applies only to void judgments lacking a preclusive effect and convictions on crimes that do not exist under state law. It does not open federal courts to a flood of habeas corpus cases requiring the interpretation of state law since the decision is narrow in scope and ordinarily the state provides means for overturning void judgments.

this court applies the definitions of Vanskike's crimes that the Illinois courts would have found binding.[18]

Vanskike's jury was instructed that he could be found guilty of a crime that does not exist under Illinois law. That is a fundamental error cognizable in a federal habeas corpus proceeding. The state's argument that Vanskike's conviction could have been upheld under Illinois law implies a harmless error argument. The state, however, does not expressly make such an argument and also makes no specific citations to the trial transcript as to the evidence on great bodily harm. Moreover, there is no argument that this is the type of claim to which harmless error may be applied, an issue itself that might not have a clear answer. *See Cole v. Arkansas*, 333 U.S. 196, 201–02, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948); *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *United States v. Kerley*, 838 F.2d 932, 937–39 (7th Cir.1988); *Cole v. Young*, 817 F.2d at 427; *Willard v. People*, 812 F.2d 461, 464 (9th Cir.1987). The court, therefore, does not consider harmless error analysis.

The writ will be granted and Vanskike's conviction for armed violence will be vacated. The state may, within sixty days, seek to resentence him on aggravated battery or retry him on armed violence to the extent either of those possibilities is an appropriate step to take consistent with state law and federal due process and double jeopardy principles.

IT IS THEREFORE ORDERED that:

(1) Respondents' motion to dismiss is denied.

(2) The Clerk of the Court is directed to enter judgment in favor of petitioner and against respondents granting the petition for a writ of habeas corpus with respect to the conviction of armed violence. Petitioner's conviction for armed violence is vacated without prejudice to respondents seeking, within 60 days, to reinstate and resentence petitioner on the conviction of aggra-

vated battery or to retry him for the offense of armed violence.

---

**18.** *Jones* also rejected the district court's analysis on the ground that *Jackson* does not apply to

sentencing. 846 F.2d at 461–62. That argument does not apply to the present case.