THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DON AGEE, Defendant-Appellant.

First District (5th Division)   No. 1—87—1202

Opinion filed October 5, 1990.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee G. Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendant was found guilty of two counts of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1) and one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)). Defendant now appeals, and we address the following issues: (1) whether evidence of the victim's character should have been admitted to support defendant's claim of self-defense; (2) whether the State proved defendant intended to kill the victims to support the attempted murder convictions; and (3) whether defendant's conviction for aggravated battery should be vacated because it was a lesser included offense of attempted murder. We affirm in part and vacate in part.

At trial, the State presented the testimony of three eyewitnesses, Sherron Sullivan, Stanley Miles, and Virginia Hall. Sullivan testified that on August 3, 1985, at approximately 9:30 p.m., she was walking across the street from her house with her two-year-old daughter. Defendant, who lived directly across the street from Sullivan, passed her on the sidewalk and entered the gangway next to his house. Sullivan crossed the street and walked up the steps to her house. Miles,

who lived two houses away, was on the steps, and Hall, who was Sullivan's tenant, was sitting on the porch. Sullivan heard a gunshot and saw a flash coming from the gangway across the street. She ran up the steps with her daughter and felt two shots hit in her legs. She saw defendant with a gun in his hands running across the street toward her house. He came up to the curb of her house, which was 15 to 20 feet from the porch. Sullivan heard a total of five shots. Defendant then turned and ran back to the gangway. Sullivan did not see a weapon in Miles' hands. When defendant's attorney asked Sullivan about Miles' reputation in the neighborhood, the trial judge sustained the State's objection.

Miles testified that he was on the steps of Sullivan's porch when he saw defendant run from the gangway across the street toward the porch. Defendant fired five shots within a matter of seconds and Miles ran inside the house. Miles testified that he was not carrying a weapon at the time. On cross-examination, Miles admitted he and defendant had a fist fight the night before the shooting. Miles also saw defendant in the morning of the day of the shooting, but he testified he did not say anything to him.

Hall testified that she saw defendant in the gangway and told Miles to "watch out" because she knew they had had an argument the night before. Defendant then came out of the gangway, shooting a gun. Hall heard one shot and fell down on the porch. Defendant asked Hall whether she knew of Miles' reputation in the neighborhood and the State objected. The objection was sustained.

The State rested its case against defendant.

William Thomas, who was married to defendant's niece, testified that on August 2, 1985, the day before the shooting, he saw defendant attempt to stop a fight between Miles and Albert Brown, who was defendant's nephew. Miles stabbed defendant in the chin with a knife. Thomas testified that he saw Miles with a gun "quite a few times" in the four years he had known Miles. On the State's objection, the trial judge would not allow Thomas to testify as to Miles' reputation in the neighborhood.

Defendant testified that the day before the shooting, at about 5:30 p.m., Miles offered to sell him cocaine. When defendant declined, Miles threatened to put a "death violation" on him, which is a gang term meaning Miles would either kill defendant himself or have someone kill defendant. Defendant walked away. An hour later, defendant saw Miles again and Miles asked whether he was ready to buy some cocaine. Defendant ignored him. At approximately 8:30 p.m., defendant saw Miles a third time and Miles again asked whether defendant was

ready. Defendant refused, and Miles said he would "whip [defendant's] ass" if he did not buy some cocaine. Defendant ignored Miles, and Miles slapped a can of soda pop from his hands. A struggle ensued, and Miles stabbed defendant in the chin. Miles ran away and said he would get defendant again. Defendant telephoned the police, but they did not come to his house. Defendant did not go to the hospital for his injuries.

The next evening, at approximately 8:30 p.m., defendant saw Miles with two other men. Miles pulled a gun from his jacket and defendant ran away. Miles chased defendant, but he was able to escape through a gangway. When defendant arrived home, he telephoned the police who again did not arrive. He received a response from Detective Harris, who told him that he should call again if he had any other problems.

The same evening, at approximately 9:15 p.m., defendant was sitting on his porch and heard voices in the gangway. He recognized Miles' voice. Defendant testified that he heard Miles and another person say, "[G]et him, get him, he is right there. Shoot him. Shoot him." Defendant went in his house to get a gun and came outside again. Defendant testified that the police would not respond to his calls and he was afraid for his life. He saw Miles and another man walking toward him on the same side of the street. Miles had his right hand in the waist band of his pants. When Miles crossed the street to the other side, defendant "fired a couple of shots in his direction to let [Miles] know that [defendant] had a pistol, too." Defendant admitted he fired five shots. After the shooting, defendant threw the gun in a sewer. Defendant testified he did not intend to shoot anyone, rather, he intended to scare Miles away from him. Defendant stated he feared Miles.

The trial judge found defendant guilty of aggravated battery of Sullivan and attempted murder of both Sullivan and Miles. Defendant's written post-trial motion was denied; however, that motion is not in the record. Defendant received concurrent sentences of five years' imprisonment for aggravated battery and 12 years' imprisonment for attempted murder.[1] Defendant now appeals.

---

[1] The transcript of the sentencing hearing, however, indicates that the trial judge said he sentenced defendant to five years' imprisonment on count II, which was the attempted murder of Sullivan, and 12 years on count III, which was the attempted murder of Miles, to run concurrently. However, the order of sentencing states that defendant received concurrent sentences of five years' imprisonment for aggravated battery and 12 years' imprisonment for the two counts of attempted murder. Neither party on appeal cited the discrepancy or claimed that the order of sentencing is incorrect.

OPINION

■ Initially, we note that defendant's written post-trial motion was not included in the record on appeal although the record indicates it was tendered to the trial judge. At oral argument for this appeal, defendant's attorney stated that the motion was lost. Without the post-trial motion it cannot be determined whether defendant preserved each of the issues raised on appeal; however, the State does not contend that defendant failed to raise the issues in the trial court. We will, therefore, consider each of the issues defendant raises on appeal.

Defendant first argues that he should have been allowed to present evidence of Miles' aggressive and violent character to support his claim of self-defense. At trial, defendant attempted to introduce evidence of Miles' reputation in the neighborhood through the testimony of Sullivan, Hall, and Thomas. The trial judge sustained the State's objection to such questioning.

■ Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 7—1) provides the factors for self-defense:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Evidence of the victim's aggressive and violent character can be introduced to support defendant's claim of self-defense if defendant presented "some evidence" that the victim was or appeared to be the aggressor. *People v. Lynch* (1984), 104 Ill. 2d 194, 204, 470 N.E.2d 1018, 1022.

Defendant contends he presented sufficient evidence to justify admitting evidence of Miles' reputation, relying on testimony that prior to the shooting, he and Miles had certain altercations. The day before the shooting, Miles stabbed him in the chin during a fight. The next day, approximately an hour before the shooting, Miles pulled a gun from his jacket and chased defendant. Additionally, 15 minutes prior to the shooting, defendant overheard Miles and another person say "shoot him" from his gangway.

■ However, defendant did not present evidence that Miles was the aggressor at the time of the shooting. Defendant testified that he

saw Miles walking down the street toward him with his hand in his waist band. When Miles crossed the street to the other side, defendant fired shots in his direction from across the street. Defendant fired at Miles as Miles was walking away from him. There was no testimony that Miles threatened defendant in any way as he walked across the street or that Miles displayed a weapon. Further, the testimony of the other eyewitnesses established that Miles was across the street from defendant at the time defendant started shooting. Accordingly, defendant did not present evidence that Miles was the aggressor and, therefore, the trial judge properly sustained objections to defendant's attempts to admit evidence of Miles' reputation.

Defendant next contends that the State did not prove he had the requisite intent to kill Sullivan and Miles to support the attempted murder convictions.

■■ ■ To establish attempted murder, the evidence must show that, beyond a reasonable doubt, defendant intended to kill. (*People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) The specific intent to kill can be inferred from the circumstances, such as the character of the assault and the use of a deadly weapon. (*People v. Treadway* (1985), 138 Ill. App. 3d 899, 486 N.E.2d 929.) Intent to commit great bodily harm is insufficient to support a conviction for attempted murder. (*Harris*, 72 Ill. 2d 16, 377 N.E.2d 28.) When a defendant claims he was convicted with insufficient evidence, the evidence must be reviewed in a light most favorable to the prosecution and the court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.

■ The testimony of the three eyewitnesses, Sullivan, Miles, and Hall, established that defendant fired five shots toward them and Sullivan's daughter and that two of the shots struck Sullivan. Defendant admitted he fired from across the street, and other testimony established that defendant ran toward them and came within 15 to 20 feet of the porch. Defendant admitted that he fired the shots in Miles' direction. Although defendant testified he did not intend to shoot anyone, viewing the evidence in a light most favorable to the prosecution, defendant's actions of firing a gun five times in the direction of four people from a distance of 15 to 20 feet established that he intended to kill Sullivan and Miles. The State presented sufficient evidence to support defendant's attempted murder convictions.

Lastly, defendant argues his conviction for aggravated battery should be vacated because it is a lesser included offense of attempted

murder and the two convictions were carved from one act. The State contends that aggravated battery based on the use of a deadly weapon is not a lesser included offense of attempted murder. The State also contends that defendant committed multiple acts to support the convictions.

In considering the propriety of multiple convictions, the Illinois Supreme Court has held:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.)

Under *King*, multiple convictions are improper if they are based on the same physical act or if some of the convictions are lesser included offenses.

■ The Illinois Supreme Court has held that aggravated battery is a lesser included offense of attempted murder. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.) Defendant relies on several appellate court cases which have also held that aggravated battery is a lesser included offense of attempted murder. (*People v. Gvojic* (1987), 160 Ill. App. 3d 1065, 513 N.E.2d 1083; *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285; *People v. Camacho* (1979), 71 Ill. App. 3d 943, 389 N.E.2d 1213.) From our research, the only case that arguably supports the State's position is *People v. Wieland* (1984), 123 Ill. App. 3d 576, 462 N.E.2d 1256, where the court held that aggravated battery based on the victim's age (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(10)) was not a lesser included offense of murder. However, we must decline to follow *Wieland* based on the supreme court's holding in *Pate*.

Under *King*, multiple convictions are improper if they include lesser included offenses. Because defendant was convicted of both attempted murder and the lesser included offense of aggravated bat-

tery, the aggravated battery conviction and sentence must be vacated.

■■ Defendant requested a new sentencing hearing if his aggravated battery conviction was vacated relying on *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48. In *Alejos*, the supreme court remanded a case for resentencing because it found that the trial judge was influenced by improper factors when sentencing defendant. In this case, however, remandment for resentencing is not necessary because there is no indication in the record that the trial judge was improperly influenced. *People v. Baity* (1984), 125 Ill. App. 3d 50, 465 N.E.2d 622.

Affirmed in part and vacated in part.

MURRAY and GORDON, JJ., concur.